## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**GUN OWNERS OF AMERICA, INC.,**

**GUN OWNERS FOUNDATION,**

**VIRGINIA CITIZENS DEFENSE LEAGUE,**

**MATT WATKINS,**

**TIM HARMSEN, and**

**RACHEL MALONE,**

           **Case No.**

     **Plaintiffs,**

           **Hon.**

**v.**

**MATTHEW WHITAKER, in his official capacity as**
**Acting Attorney General of the United States,**

**U.S. DEPARTMENT OF JUSTICE,**

**BUREAU OF ALCOHOL, TOBACCO,**
**FIREARMS AND EXPLOSIVES, and**

**THOMAS E. BRANDON, in his official capacity as Acting**
**Director, Bureau of Alcohol, Tobacco, Firearms, and Explosives,**

     **Defendants.**

---

Kerry L. Morgan* (P32645)
PENTIUK, COUVREUR & KOBILJAK, P.C.
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
Main: (734) 281-7100
F: (734) 281-2524
KMorgan@pck-law.com
*Counsel for Plaintiffs

Robert J. Olson
William J. Olson
Jeremiah L. Morgan
Herbert W. Titus
WILLIAM J OLSON, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA 22180
T: (703) 356-5070
F: (703) 356-5085
wjo@mindspring.com
Of counsel

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Now comes Plaintiffs by and through Counsel and for their Complaint state as follows:

1.      Numerous times over many years, ATF has been asked to determine whether various "bump-fire-type stocks" or "bump stocks" constitute "machineguns" under federal law.

2.      ATF has acknowledged that such devices, which have "no automatically functioning mechanical parts or springs and perform[] no automatic mechanical function when installed," are not machineguns under federal law.  *See*, *e.g.,* Exhibit 1.

3.      On October 1, 2017, there was a mass shooting in Las Vegas, Nevada, at the Route 91 Harvest music festival.  Various news sources have reported that there were bump stocks installed on some of the rifles found at the scene.

4.      Bowing to the political pressure that followed, President Trump ordered that ATF reclassify bump stocks as machineguns through regulation[1] — despite the clarity of federal law and ATF's consistent legal conclusions to the contrary.

5.      Within days of the President's decree, ATF concluded that bump stocks are, in fact, machineguns, and demeaned all of its prior decisions on the subject as "not includ[ing] extensive legal analysis" and  "not reflect[ing] the best interpretation" of the law.  Notice of Proposed Rulemaking, 83 *Fed Reg.* 13442 (Mar. 29, 2018) ("NPRM") at 13443.

6.      ATF's re-classification of bump stocks as machineguns is a political decision designed to circumvent the legislative process, not a legal one based on any technical evaluation. It ignores the plain text of the statute, and all prior ATF determinations and opinions.  The

---

[1]  https://www.whitehouse.gov/presidential-actions/presidential-memorandum-application-definition-machinegun-bump-fire-stocks-similar-devices/

classification of bump stocks as machineguns is arbitrary and capricious, contrary to law, obfuscates the way bump stocks operate, and reaches an irrational decision, unsupportable in either law or fact.

7.     Plaintiffs bring this action seeking a preliminary injunction to preserve the status quo, followed by permanent injunctive relief restraining Defendants from enforcing ATF's regulation designed to prohibit private ownership of so-called "bump-fire stocks."  Finally, Plaintiffs seek a declaratory judgment that such bump-fire stocks do not constitute "machineguns" under existing federal law.  As grounds therefor, Plaintiffs allege the following:

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.  This Court has authority to grant the remedy Plaintiffs seek under 28 U.S.C. §§ 2201 and 2202 and 5 U.S.C. § 706.

9.     Venue is proper in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e).

## PARTIES

10.     Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation with its principal place of business in Virginia, at 8001 Forbes Place, Springfield, VA 22151.  GOA is organized and operated as a non-profit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1975 to preserve and defend the Second Amendment rights of gun owners. GOA has hundreds (if not thousands) of members and supporters, including residents of the

Western District of Michigan, who own bump stocks, or who wish to acquire them, but for the challenged regulation.

11.     Gun Owners Foundation ("GOF") is a Virginia non-stock corporation, with its principal place of business in Virginia, at 8001 Forbes Place, Springfield, VA 22151.  GOF is organized and operated as a non-profit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code.  GOF is supported by gun owners across the country, and through contributions made through the Combined Federal Campaign.

12.     Virginia Citizens Defense League ("VCDL") is a Virginia non-stock corporation, with its principal place of business in Virginia, at P.O. Box 513, Newington, VA 22122.  VCDL is organized and operated as a non-profit civic league that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code.  VCDL is supported by gun owners both within and without Virginia.

13.     Matt Watkins is a United States citizen, and resident of Hudsonville, Michigan, located within Ottawa County within this district.  He is a law-abiding person, and has no disqualification that would prevent him from keeping and bearing arms.  Mr. Watkins is a member of GOA.  Mr. Watkins currently owns a Slidefire bump stock, a device that would be banned under the noticed regulation.  Under the noticed regulation, Mr. Watkins would be forced to surrender or destroy his bump stock, losing the considerable value thereof.  Mr. Watkins has used and wishes to continue to use his bump stock in recreational shooting and target practice.  Mr. Watkins may also seek to purchase or own additional bump stocks in the future.

14.    Tim Harmsen is a United States citizen, and resident of Valparaiso, Indiana.  He is a law-abiding person, and has no disqualification that would prevent him from keeping and bearing arms.  Mr. Harmsen is a member of GOA.  Mr. Harmsen is an owner of Copper Custom Armament, a firearm retail store offering customization and gunsmithing services, and www.Full30.com, a website providing video content exclusively of firearms reviews, education, and entertainment.  Mr. Harmsen is also the owner and operator of the Military Arms Channel on YouTube, which has over 800,000 subscribers, and over 136 million views of his nearly 800 videos relating to all manner of small arms.  Mr. Harmsen possesses bump stocks and would like to acquire additional bump stocks in the future.  Mr. Harmsen has spent much time shooting, teaching, and demonstrating how to bump fire with and without bump stocks, including in numerous videos posted to the Military Arms Channel.  As such, he is intimately familiar with the operation of bump stocks.  Should the noticed regulation take effect, not only will Mr. Harmsen be forced to surrender or destroy his valuable possessions, but also his business could be affected by being unable to continue to create content featuring bump stocks.  His business also would be unable to engage in retail sales of bump stocks to the public, should it so desire.

15.    Rachel Malone is a United States citizen, and resident of Manor, Texas.  She is a law-abiding person, and has no disqualification that would prevent her from keeping and bearing arms.  Ms. Malone is a member of GOA, and is GOA's Texas Director.  Ms. Malone holds numerous firearms certifications, including being an NRA-certified firearms instructor, holds a Texas License to Carry handguns, and is best known for her work in grassroots activism in the Second Amendment community.  Ms. Malone currently does not own bump stocks, but would purchase one, if not for the noticed regulation.

16.     The individual Plaintiffs, along with the organizational Plaintiffs, their members, and supporters, will be irreparably harmed if the noticed regulation is permitted to take effect. Not only will many of the Plaintiffs lose the monetary value of their possessions (through forced surrender, confiscation, or destruction) and their ability to use them, but all the Plaintiffs will be deprived of the ability to purchase and use bump stocks in the future.  Plaintiff bump stock owners will lose the use and enjoyment of their belongings, along with the ability to keep and bear firearms equipped with bump stocks.  Semiautomatic rifles which only have a bump fire stock attached will be rendered inoperative unless a new stock is purchased by the owner. Finally, any bump stock owner who retains a bump stock past the effective date, thinking he is protected by a copy of the prior ATF approval letter included by retailers with many bump stock shipments, will be at risk of felony prosecution — and accompanying permanent loss of their Second Amendment rights — even if unaware of this sudden change in law.

17.     In his capacity as the Acting Attorney General of the United States, Defendant Matthew Whitaker is purporting to exercise the powers of the Attorney General of the United States, as who was delegated certain authority by federal law to promulgate rules and regulations to carry out the provisions of the National Firearms Act of 1934 and the Gun Control Act of 1968.  *See* 18 U.S.C. § 926; 26 U.S.C. § 7805(a).  Mr. Whitaker's predecessor, former Attorney General Sessions, was the recipient of President Trump's February 2018 memorandum ordering that bump stocks be banned by administrative action.[2]

---

[2]  https://www.justice.gov/opa/pr/attorney-general-sessions-announces-regulation-effectively-banning-bump-stocks.

18.     Defendant U.S. Department of Justice ("DOJ") is an executive agency within the federal government of the United States.  DOJ is headquartered at 950 Pennsylvania Avenue NW, Washington, D.C.  20530.

19.     Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is a component of the DOJ, and is headquartered at 99 New York Avenue NE, Washington, D.C. 20226.

20.     Defendant Thomas E. Brandon is the Acting Director of ATF, and is responsible for overseeing the agency's promulgation of the regulation challenged herein.

## STATEMENT OF FACTS

### Federal Statute

21.     Ever since the 1934 National Firearms Act (26 U.S.C. Chapter 53) ("NFA"), enacted pursuant to Congress' power to lay and collect taxes, machineguns have been regulated heavily by the federal government.

22.     Since the Hughes Amendment to the 1986 Firearm Owners Protection Act ("the machinegun ban"), which amended the Gun Control Act of 1968 ("GCA"), Americans generally are prohibited from possessing and transferring machineguns, except for those that were in existence and registered prior to the effective date of the statute, May 19, 1986.  18 U.S.C. § 922(o).  *See* Final Rule, 83 *Fed Reg.* 66514 (Dec. 26, 2018) at 66536.

23.     Today, pursuant to its reassignment from the Department of the Treasury to the Department of Justice under the Homeland Security Act of 2002, 116 Stat. 2135, ATF controls the registration and regulation of machineguns pursuant to the provisions of the NFA and GCA. *See* Final Rule at 66515 n.2.

24.     26 U.S.C. § 5845(b) defines a machinegun as follows:  "The term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."

25.     18 U.S.C. § 921(23) (enacted with the 1986 machinegun ban) states that "The term 'machinegun' has the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b))."

### Federal Regulations

26.     ATF has limited authority under the Gun Control Act to promulgate: "only such rules and regulations as are necessary to carry out the provisions of this chapter...."  18 U.S.C. § 926(a).  *See* Final Rule at 66527.

27.     Under the National Firearms Act, ATF has the authority to "prescribe all needful rules and regulations for the enforcement of this title...."  26 U.S.C. § 7805(a).

28.     Relying on its statutory authority, ATF has promulgated various regulations in Title 27, Code of Federal Regulations.  Final Rule at 66514.

29.     Until the challenged rulemaking, ATF's regulations mirrored the federal definition of the term "machinegun" with respect to firearms manufactured and owned in the United States.  27 C.F.R. § 478.11; 27 C.F.R. § 479.11.

30.     In the 84 years since passage of the National Firearms Act, ATF has never seen the need to enact regulations further expounding on the statutory meaning of the term "machinegun."  Until now.

### The "Bump Fire" Shooting Technique

31.     "Bump fire" is a shooting technique — requiring skill, patience, and practice — which allows a shooter to engage in rapid, semiautomatic fire.  *See* Exhibit 2 (Acting Director Brandon referring to "the bump fire technique.").

32.     In 2006, ATF noted that "'bump fire' is a vernacular used in the firearms culture ... meaning rapid manual trigger manipulation to simulate automatic fire ... you are simply firing a semiautomatic firearm in a rapid manner and are not violating any Federal firearms laws or regulations."  Exhibit 3.

33.     By contrast, a fully-automatic machinegun discharges multiple rounds with a "single function" of the trigger[3] — *i.e.*, an "automatic firing cycle that continues until the finger is released or the ammunition supply is exhausted."  ATF Rul. 2006-2.[4]

34.     Because a machinegun fires automatically by pulling the trigger once, it can be fired with one hand.  A bump stock, however, cannot be fired with one hand.  *See* Verified Declaration of Richard (Rick) Vasquez (hereinafter "Vasquez Decl.") ¶ 13(d).

---

[3]  https://www.youtube.com/watch?v=-PYr_EY1lss

[4]  https://www.atf.gov/firearms/docs/ruling/2006-2-classification-devices-exclusively-designed-increase-rate-fire/download

35.    Bump stocks are nothing more than a type of firearm stock (usually plastic) that fits loosely over the firearm, allowing the firearm to reciprocate back-and-forth freely.[5]  Final Rule at 66516.

36.    Typically, when using a bump stock, a shooter rests his trigger finger on a plastic ledge that is part of the bump stock (and not on the trigger), with that dominant hand holding the stock firmly against his shoulder.  *See* Final Rule at 66516.  His support hand then grips the firearm's handguard, and provides forward pressure on the firearm, pushing it forward until the trigger contacts his trigger finger.  Vasquez Decl. ¶ 11.

37.    Whereas the recoil of a fired shot generally drives a firearm rearward, bump firing involves opposing pressure by the support hand pushing the firearm forward.  Vasquez Decl. ¶ 11.

38.    Each time a shot is fired, recoil pushes the firearm rearward.  Vasquez Decl. ¶ 10*; see* Final Rule at 66516.  This rearward movement causes the shooter's trigger finger to break contact with the trigger (Final Rule at 66516), permitting it to "reset," and complete a "single function of the trigger."  However, the continual forward pressure by the shooter's support hand again pushes the firearm forward, causing the trigger to impact the trigger finger another time. Vasquez Decl. ¶ 28(b).  *See* Exhibit 34.

39.    Through this technique, a shooter is able to rapidly "bump" the trigger onto and off of the trigger finger.  *See* Vasquez Decl. ¶ 13(c).

---

[5]  https://www.rwarms.com/wp-content/uploads/2018/05/10-0110-00-10.jpg

10

40.     Those skilled in bump firing can achieve rapid semiautomatic fire that some could misunderstand to be fully automatic fire.[6]

41.     However, bump fire is not automatic fire.  Bump fire is rapid, semiautomatic fire. Vasquez Decl. ¶ 12; *see* Final Rule at 66516.

42.     So-called "bump fire stocks" or "bump stocks," when used in bump fire mode, are designed to **assist** a shooter with the legal, semiautomatic bump firing technique described above.

43.     Bump stocks do not change the mechanical operation of a firearm in any way. Vasquez Decl. ¶ 13(c).

44.     Because bump fire is a shooting technique, not a device, a ban on bump stocks will not eliminate bump firing, which ATF admits remains a legal type of semiautomatic fire. Final Rule at 66516; Vasquez Decl. ¶ 13(f).

**ATF Operations**

45.     The ATF Firearms and Ammunition Technology Division ("FATD") "is the federal technical authority regarding firearms and ammunition and their classification under federal laws and regulations...."  *See* ATF Fact Sheet:  Firearms and Ammunition Technology Division (May 2018).

46.     Within FATD, the Firearms Technology Industry Services Branch ("FTISB") (formerly FTB) "responds to ... industry requests regarding importation evaluations and domestic manufacturing examinations...."  *Id.*

---

[6]   https://www.youtube.com/watch?v=7RdAhTxyP64.

11

47.     As ATF explains, "individuals ... voluntarily ... submit numerous items to ATF to make classifications ... Classifications are memorialized via a letter from ATF ..."   Exhibit 4.

48.     FTISB's classifications generally are made through informal "private letter rulings" to individuals and industry members who submit samples for classification.  *See* Exhibit 4.

49.     ATF does not make private letter rulings a matter of public record.  *See* Exhibit 4.

50.     Rather, the only way private letter rulings become public is if the recipient chooses to make the letter public.

51.     Upon information and belief, there is no known central, digital repository for ATF private letter rulings — including within the agency itself.

52.     For example, an October 3, 2017 email from Earl Griffith, Chief Firearms and Ammunition Technology Division, to Assistant Director Marvin G. Richardson included a spreadsheet of 11 bump stock letters and stated "This is all we could find in our data bases." Exhibit 5.

53.     Nevertheless, a later October 6, 2017 email from Deputy Assistant Director Megan Bennett attached a "binder" of ATF bump stock classification letters which contained at least 25 entries.  Exhibit 6.

54.     ATF claims that its private letter rulings are non-binding, non-precedential, and cannot be relied on as legal authority by anyone other than the person to whom the letter is addressed, for the particular sample that was submitted.  Thus, ATF remains free to change its mind at any time, and often has simply overruled one letter ruling with another.

55.     ATF has a checkered past when it comes to classifying things that allegedly constitute machineguns.  For example, in 1996 and 2004, ATF twice infamously concluded that a shoestring is a machinegun.  *See* Exhibit 7.

56.     It was not until 2007 that ATF overruled those two rulings, and finally arrived at the common sense conclusion "that the string by itself is not a machinegun...."  *See* Exhibit 8.

### ATF Past Approval of Bump Fire Stocks

57.     In 2002, ATF received a request to classify a firearm stock/mechanism that enabled the rapid fire of a semiautomatic firearm by utilizing recoil energy.  *See* Akins v. United States, 82 Fed. Cl. 619, 621 (U.S. Claims 2008).

58.     On November 17, 2003, ATF (through a private letter ruling) determined that this device, the "Akins Accelerator," a reciprocating stock using an internal spring, was **not** a machinegun.  *See* Exhibit 9.

59.     On January 29, 2004, in response to further questions by the manufacturer, ATF again wrote that "[t]he theory of operation was clear" and that the Akins Accelerator definitely was **not** a machinegun.  *See* Exhibit 10.

60.     Then, on November 22, 2006, ATF changed course, deciding now that the Akins Accelerator **was in fact** an illegal machinegun.  *See* Exhibit 11.

61.     On December 13, 2006, ATF followed up the Akins letters by issuing ATF Ruling 2006-2, which classified as a machinegun any device that, "when activated by a single pull of the

trigger, initiates an automatic firing cycle that continues until the finger is released or the ammunition supply is exhausted."[7]

62.   ATF Ruling 2006-2 concluded that a device such as the Akins Accelerator, which used a compressed "coiled spring" to achieve rapid fire "is a machinegun under the National Firearms Act."

63.   On June 18, 2008, ATF was then asked to review a bump style device that **did not use a spring**, and concluded that, unlike devices which used a spring, the device was "incapable of initiating an automatic firing cycle...."  Exhibit 12.

64.   On June 26, 2008, in another private letter ruling, ATF clarified its 2006 determinations, and noted that "the absence of an accelerator spring ... prevents the device from operating automatically" and thus that a bump fire device like the Akins Accelerator — without a spring — is not a machinegun.[8]  *See* Exhibit 14.

65.   Thereafter, manufacturers began to submit samples of bump-fire-type stocks that did not utilize springs.  In accordance with ATF Ruling 2006-2, ATF has consistently held that these devices are not machineguns under federal law.  *See* Exhibits 1, 15-23.

66.   On June 7, 2010, ATF concluded that the Slide Fire bump stock "has no automatically functioning mechanical parts or springs and performs no automatic mechanical function when installed."  Exhibit 1.

---

[7]   https://www.atf.gov/firearms/docs/ruling/2006-2-classification-devices-exclusively-designed-increase-rate-fire/download

[8]   On May 25, 2011, ATF similarly concluded for another device that "[t]he absence of an accelerator spring ... prevents the device from operating automatically as described in ATF Ruling 2006-2."  Exhibit 13.

67.     On March 9, 2011, ATF concluded that "an AR-15 type rifle which has been fitted with a sliding shoulder-stock type buffer-tube assembly ... has no automatically functioning mechanical parts or springs and performs no automatic mechanical function."  Exhibit 15.

68.     On April 2, 2012, ATF held that a "plastic shoulder stock" requires application of "the appropriate amount of forward pressure" and thus is "incapable of initiating an automatic firing cycle" and "FTB finds that it is **not** a machinegun...."  Exhibit 16 (emphasis original).

69.     On July 9, 2012, ATF examined a "replacement shoulder stock for a Saiga-12 type shotgun" which "allows the shotgun to slide back and forth, independently of the shoulder stock and pistol grip," and found that it "is a firearm part and is not regulated."  Exhibit 17.

70.     On July 13, 2012, ATF examined a "'bump fire' type stock designed for use with a semiautomatic AK-pattern type rifle," which allows the rifle "to reciprocate back and forth in a linear motion," and found "it is NOT a machinegun under the NFA...."  Exhibit 18.

71.     On February 11, 2013, ATF examined the "Bumpski" bump fire stock and, for the same reasons as above, concluded that "it is NOT a machinegun under the NFA...."  Exhibit 19.

72.     On April 16, 2013, ATF's Assistant Director for Public and Governmental Affairs rejected a congressional request to reclassify bump stocks as machineguns.  ATF explained that, in the past, the "Akins Accelerator incorporated a mechanism to automatically reset and activate the fire-control components of a firearm," whereas modern bump stocks "require[] **continuous multiple inputs** by the user for each successive shot."  Exhibit 20 (emphasis added).  ATF noted that bump fire stocks "do not fall within any of the classifications for firearm contained in Federal law" and "ATF does not have the authority to restrict their lawful possession, use, or transfer."  *Id.*

15

73.     On May 1, 2013, ATF examined "'the HailStorm,' ... a replacement 'bump-fire' type stock designed for use with a semiautomatic AR-15 type rifle" and, for the same reasons as above, found "that it is NOT a machinegun under the NFA...."  Exhibit 21.

74.     On September 14, 2015, ATF concluded that a submitted "10/22-style rifle stock" allows a shooter to "pull[] the firearm forward to fire each shot" and thus, for the same reasons as above, "it is not a machinegun as defined under the NFA...."  Exhibit 22.

75.     On April 6, 2017, ATF issued another private letter ruling classifying yet another bump stock, noting that "your device does not initiate an automatic firing cycle by a single function of the trigger" and "FTISB finds that it is <u>NOT</u> a machinegun...."  Exhibit 23.

76.     As a result of ATF's past approvals of bump stock devices, several individuals and corporations expended considerable resources engaging in R&D, product development, production, and marketing and sale of their bump stock products.  ATF now estimates that "the total undiscounted cost of this rule [is] $312.1 million over 10 years," not even taking into account various "[u]nquantified costs...."  Final Rule at 66515.  ATF estimates that there are as many as 520,000 bump stocks owned by gun owners throughout the United States — all of these devices are now required to be destroyed or surrendered for destruction.  Final Rule at 66523.

**Las Vegas Shooting & Aftermath**

77.     On October 1, 2017, a shooter opened fire on a large crowd of people in Las Vegas, Nevada, inflicting large numbers of casualties.  Final Rule at 66516.

78.     Some of the firearms found at the scene reportedly were equipped with bump fire stocks.  Final Rule at 66516.

79.     Following the Las Vegas shooting, there was significant political pressure on ATF, Congress, and the Trump Administration to ban the ownership of bump stocks.

80.     Nevertheless, ATF continued to insist that it had no legal authority to regulate bump stocks, consistent with more than 15 years of agency precedent, spanning three presidential administrations.

81.     On October 2, 2017, ATF Acting Director Thomas Brandon sent an email to a subordinate, asking "are these [bump stocks] 'ATF approved' as advertised?"  Exhibit 24.

82.     On October 2, 2017, Acting Director Brandon received a reply that "They are approved as advertised as long as an individual doesn't perform additional modifications to the firearm." *Id.*

83.     On October 3, 2017, Assistant Special Agent in Charge Monique Y. Villegas sent an email, noting "the loophole ATF recognized in 2012 and tried to get congress to pass legislation so that bump fire devices can be subject to NFA regulations."  Exhibit 25.

84.     On October 6, 2017, Acting Assistant Director of Public & Governmental Affairs Joseph J. Allen recommended that "we should ultimately ask DOJ to allow us to point the various issues out to Congress so that they may be able to further consider permanent legislative fixes."  Exhibit 26.

85.     On October 8, 2017, an email sent from the ATF Association email address atf-family@googlegroups.com noted that "[t]he focus on the Las Vegas shooters [sic] use of the bump slide obscures the fact that this individual could have just purchased actual machineguns legally."  Exhibit 27.

17

86.     The same email noted that "These accessories DO NOT cause the firearm to shoot more than one shot by the single function of a trigger pull.  There is a trigger pull for each shot ... The law is very clear and it does not currently allow ATF to regulate such accessories."  *Id.*

87.     On October 19, 2017, the Washington Examiner reported that "House aides said the ATF indicated at a lawmaker briefing last week that it's not ready to regulate bump stocks and promoted the idea of bump stock legislation.... ATF's presentation made it clear that the agency is unlikely to push for a new regulation.  This aide said the feeling at the agency is that current law is clear enough, and that it would be difficult to impose a new regulation limiting access to bump stocks in a way that's consistent with U.S. law."  Exhibit 28.

88.     On October 20, 2017, after receiving that briefing from ATF, Senator Dianne Feinstein tweeted that "The ATF does NOT have the authority to address bump-fire stocks—and has made this point clear to Congress MULTIPLE times."[9]

89.     Thus, even in the aftermath of the Las Vegas shooting, it seemed that virtually everyone agreed that bump stocks had been properly classified as firearm accessories.

**ATF'S SUDDEN SHIFT OF POLICY**

90.     On October 6, 2017, a retired ATF Special Agent in Charge sent Acting Director Brandon an email, recommending that ATF ban bump stocks, and that Mr. Brandon ignore the advice of ATF's technical branch.  The email stated:  "I recommend an overruling of the prior decision and putting it [bump stock] under the NFA.... You can do it fast and it is the right thing to do, don't let the technical experts take you down the rabbit hole."  Exhibit 29.

---

[9]  https://twitter.com/SenFeinstein/status/921461866840428544.  *See also* P. Kasperowicz, "Dianne Feinstein: ATF Won't Regulate 'Bump Stocks,'" *Washington Examiner* (Oct. 20, 2017).

91.     On October 6, 2017, Acting Director Brandon replied "I'm very concerned about public safety and share your view." *Id.*

92.     On October 6, 2017, the former SAIC replied "Found I often had to override experts .... Lab, ETB, Etc they get in such a technical world they can lose common sense...." *Id*.

93.     Upon information and belief, decisions regarding the noticed rulemaking have taken place at the highest levels within ATF, within the DOJ, and within the Administration.

94.     Upon information and belief, FATB personnel were not involved in the crafting of the Proposed or Final Bump Stock Rule.

95.     Upon information and belief, FTISB did not engage in any additional technical analysis of bump stocks before ATF issued the challenged regulation.

96.     FATB's exclusion from the development of the challenged regulation shows that ATF's technical experts were unwilling to go along with the bump stock reclassification.

97.     In fact, rank and file ATF personnel generally recognize that noticed regulation is without basis in law or fact.

98.     Essentially, ATF's technical experts were overruled and ignored by senior DOJ and ATF personnel, who wished to enact the noticed regulation for political reasons.

99.     In March of 2018, CNN reported that Acting Director "Brandon ... told senators that he was initially advised by his agency experts and lawyers in the aftermath of last fall's Las Vegas shooting that banning bump stocks was outside the law, but his agency has since arrived at a different conclusion after working with a team launched by the Department of Justice."[10]

---

[10]  D. Shortell, "ATF Chief tells Congress laws to ban bump fire stocks is best route," CNN Politics, Mar. 14, 2018, https://www.cnn.com/2018/03/14/politics/bump-stocks-legislation-atf/index.html; *see also* "Trump may want to ban bump stocks, but ATF isn't sure it can," CBS

100.     On December 26, 2017, reportedly under orders from President Trump, ATF issued an "Advance Notice of Proposed Rulemaking" asking for public comment as to **whether** bump stocks had been properly classified as "accessories" under federal law.  82 *Fed. Reg.* 60929 (Dec. 26, 2017).

101.     Then, on February 20, 2018, President Trump issued his memorandum to Attorney General Jeff Sessions, ordering that ATF issue a rulemaking banning bump stocks.

102.     On March 29, 2018, ATF issued a "Notice of Proposed Rulemaking," ("NPRM") proposing to classify bump stocks as machineguns, and to make amendments to ATF's definitions of machinegun in the Code of Federal Regulations.  83 *Fed. Reg.* 13442 (Mar. 29, 2018).  Comments were due by June 27, 2018.

103.     In that NPRM, ATF tossed its entire 17-year history with bump stocks into the trash bin — overriding the considered judgment of at least one ATF Director, four Assistant Directors, and five Chiefs and one Acting Chief of the Firearms Technology Industry Services Branch.

104.     The final rule attempts to discredit the agency's own work, alleging that all of its past private letter rulings, its Ruling 2006-2, and its 2013 response to a congressional inquiry, "did not include extensive legal analysis" and "did not reflect the best interpretation of the term 'machinegun'...."  Final Rule at 66514.

105.     Rather, ATF alleged that devices that are "designed to increase the rate of fire of semiautomatic firearms" are machineguns.  Final Rule at 66517.

News, Feb. 22, 2018, https://www.cbsnews.com/news/trump-may-want-to-ban-bump-stocks-but-atf-isnt-sure-it-can/ ("Acting ATF director Thomas Brandon has sent mixed signals on what the agency can do.")

106.   At the heart of its claim, ATF asserted that semiautomatic fire, if it "mimic[s] automatic fire," **is** automatic fire.  Final Rule at 66516.

107.   On December 26, 2018, ATF issued its Final Rule.  82 *Fed. Reg.* 66514 (Dec. 21, 2018).

108.   ATF's Final Rule amends the statutory and regulatory definition of machinegun to add the following language:  "For purposes of this definition, the term 'automatically' as it modifies 'shoots, is designed to shoot, or can be readily restored to shoot,' means functioning as the result of a **self-acting or self-regulating mechanism** that allows the firing of multiple rounds through a **single function** of the trigger; and 'single function of the trigger' means a **single pull** of the trigger and analogous motions.  The term 'machinegun' includes a bump-stock-type device, *i.e.*, a device that allow a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by **harnessing the recoil energy** of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing **without additional physical manipulation** of the trigger by the shooter."  Final Rule at 66553-54 (emphasis added).

109.   Bump stocks do not work "as the result of a self-acting or self-regulating mechanism."  Vasquez Dec. ¶ 28(f).  However, all semiautomatic firearms function "as the result of a self-acting or self-regulating mechanism," in that they automatically load the chamber with fresh ammunition and reset the trigger components.  Vasquez Dec. ¶ 22-23.

110.   Bump stocks do not fire "multiple rounds through a single function of the trigger." Vasquez Dec. ¶ 28(b).

111.   Bump stocks do not fire "multiple rounds through a single pull of the trigger." Vasquez Dec. ¶ 28(c).

21

112.    Bump stocks do not fire "automatically."  Vasquez Dec. ¶ 28(a).

113.    Bump stocks do not harness recoil energy of the semiautomatic firearm.  Vasquez Dec. ¶ 28(g).  However, all semiautomatic firearms "harness the recoil energy" of a fired shot, in order to load fresh ammunition and reset trigger components.  Vasquez Dec. ¶22.

114.    Bump stocks do not increase the mechanical "rate of fire" of a firearm.  Vasquez Decl. ¶ 13(e).

115.    And, as ATF has admitted, bump stocks"require[] **continuous multiple inputs** by the user for each successive shot."  Vasquez Dec. ¶ 28(g).

### ATF DOES NOT APPEAR TO HAVE ANALYZED THE LAS VEGAS FIREARMS

116.    On October 2, 2017, Acting ATF Deputy Director Ronald B. Turk wrote an email to Acting Director Thomas E. Brandon, reporting that "Our FTD firearms expert will be in Vegas soon and examining the rifles from the scene.  LE reports possible 'bump fire' stock devices attached to two rifles at the hotel scene — more to follow after expert analysis."  Exhibit 30.

117.    However, it appears that this "expert analysis" never occurred.

118.    Rather, it seems that ATF was forced to get its information from public news sources.

119.    On October 3, 2017, Acting Director Brandon received an email from Earl Griffith, Chief Firearms and Ammunition Technology Division with a link to an AP news article reporting that the Las Vegas shooter had bump stocks attached to some of his rifles.  Acting Director Brandon replied "Thanks for letting us know, Earl."  Exhibit 31.

120.    On October 17, 2017 — more than two weeks after the Las Vegas shooting — Acting Deputy Director Turk reported that "we apparently have never seen a report or had access

22

[to] the Vegas shooting ammo for analysis.  Is that still correct?  If so, it seems problematic that the FBI classified the ammo without our involvement, conducted interviews at places like Lake City, and now asks us to join at the end...."  Exhibit 32.

121.    On October 18, 2017, Acting Deputy Director Turk received a reply that "We have not seen any reports or ammo analysis from the FBI," and responded that "FBI should have asked for our technical support that we have been pressing for for over a week...."  *Id.*

122.    An ATF report entitled "Las Vegas Recovered Weapons and Ammunition" reported that "on-scene ATF personnel were **not** allowed to physically examine the interior of the weapons for machinegun fire-control components or known machinegun conversion devices such as Drop-In Auto Sears, Lightning Links, etc."  Exhibit 33 (emphasis original).

123.    Thus, ATF's report entitled "Las Vegas Recovered Weapons and Ammunition" employs the phrase "appears to be" no fewer than 20 times.  *Id.*

124.    Upon information and belief, in promulgating its Final Rule, ATF has no proof that the Las Vegas shooter actually **used** bump stocks in the shooting — only that bump stocks were found **installed** on some of the firearms found at the scene.

**ALLEGATIONS RELATING TO INJUNCTIVE RELIEF**

125.    Based on the foregoing, the Court should enjoin the Final Rule from taking effect.

126.    If the noticed regulation is permitted to take effect, Plaintiffs will be irreparably harmed as discussed in paragraph 16 above.

127.    In addition to banning bump stocks by name, the noticed regulation will give ATF broad new authority, not found in any statute, to regulate any part that can increase the rate at which a semiautomatic firearm can be fired.

128.    Because the noticed regulation will become effective on 90 days from its publication in the Federal Register, the threat of harm to Plaintiffs is imminent, and Plaintiffs possess no adequate remedy to compensate for that injury.

129.    The balance of the harms weighs in Plaintiffs' favor.  If Plaintiffs and those like them are wrongly forced to destroy or surrender their property, well over $100 million in property could be lost and, in addition, they will be deprived of its use.  Furthermore, Defendants have no valid interest in an unlawful exercise of their rulemaking authority.

130.    Meanwhile, there is little to no risk of any harm to Defendants should this policy be put on hold, as the regulation itself denies any public safety rationale, and the status quo maintained until the Court can reach a decision on the merits.

131.    Finally, the issuance of an injunction would serve the public interest, as it is always in the public interest that federal agencies do not issue unlawful regulations.

## FIRST CAUSE OF ACTION
### (VIOLATION OF APA 5 U.S.C. § 702(2)(A))

132.    Plaintiffs reallege paragraphs 1 through 131 as though fully set forth herein.

133.    Defendants' conclusion that bump stocks constitute machineguns is without authority, and contrary to the plain language of the statute.

134.    Defendants' administrative bump stock ban is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

135.    Plaintiffs are adversely affected because they will be irreparably harmed by Defendants' regulation, in that they will be forced to turn over, destroy, or decommission their bump stocks, or risk felony prosecution.

## SECOND CAUSE OF ACTION
## (VIOLATION OF APA 5 U.S.C. § 702(2)(C))

136.    Plaintiffs reallege paragraphs 1 through 135 as though fully set forth herein.

137.    Defendants' administrative bump stock ban is in excess of the agency's statutory jurisdiction and authority and is short of the agency's statutory right.

138.    Defendants' administrative bump stock ban will prohibit the ownership and possession of firearm accessories that are not prohibited by the relevant statutes.

139.    Plaintiffs are adversely affected because they will be irreparably harmed by Defendants' regulation in that they will be forced to turn over, destroy, or decommission their bump stocks, or risk felony prosecution.

## THIRD CAUSE OF ACTION
## (VIOLATION OF FIFTH AMENDMENT TAKINGS CLAUSE)

140.    Plaintiffs reallege paragraphs 1 through 139 as though fully set forth herein.

141.    The regulation requires that "current possessors of these devices ... destroy the devices or abandon them at an ATF office prior to the effective date of the rule." Final rule at 2.

142.    This will result in the complete and total loss of property to the individual plaintiffs and the organizational plaintiffs' members.

143.    ATF's Final Rule estimates that its final rule will result in a loss of property, amounting to $102.5 million alone, as well as loss business opportunities ("forgone future production and sales") (Final Rule at 66515) for those who choose to comply with the regulation.

144.    ATF argues that it has the authority to confiscate what it now deems contraband, but it is the ATF who told gun owners that bump stocks were unregulated accessories and perfectly legal to own.

25

145.    The regulation constitutes a taking of private property without just compensation, in violation of the Fifth Amendment.

## FOURTH CAUSE OF ACTION
## (DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS)

146.    Plaintiffs reallege paragraphs 1 through 145 as though fully set forth herein.

147.    Both the United States Constitution and the Michigan Constitution prohibit the deprivation of property without the due process of law. U.S. Const. Am. XIV; Const. 1963, Art 1, § 17.

148.    Plaintiffs have a property right in the possession and continued possession of their bump stocks, which were lawful to possess when acquired, and Defendants are prohibited from depriving Plaintiffs of that property absent due process of law.

149.    The fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner.  Mathews v. Eldridge, 424 US 319 (1976).

150.    Plaintiffs' procedural due process rights were violated when Defendants caused the regulation to be published without affording a pre-deprivation or other hearing.

151.    The procedure to dispose of Plaintiffs' property (surrender or destruction) does not afford Plaintiffs due process, either pre-deprivation or post-deprivation, and therefore the Defendants are constitutionally prohibited from terminating Plaintiffs' property rights under the noticed regulation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant all appropriate relief, including:

a.    The issuance of a preliminary injunction, halting Defendants' enforcement of the challenged regulation.

b.    A declaratory judgment, pursuant to the Declaratory Judgment Act (28 U.S.C. §§ 2201-2202) or other applicable law, that holds unlawful and sets aside ATF's action, finding that rapid, semiautomatic fire is not fully automatic fire, that bump stocks are not machineguns under federal law, but rather nothing more than firearm accessories which Defendants have no authority to regulate.

c.    An order permanently enjoining Defendants from enforcing the challenged regulation, or in any other way regulating bump stocks under currently existing law.

d.    An award of attorneys' fees and costs to Plaintiffs pursuant to Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), and any applicable statute or authority; and

e.    Any other relief that this Court in its discretion deems just and proper.

    /s/ Kerry L. Morgan
Kerry L. Morgan*
(P32645)
Pentiuk, Couvreur & Kobiljak, P.C.
2915 Biddle Avenue
Edelson Building
Suite 200
Wyandotte, MI  48192-5267
734-281-7100 (telephone)
734-281-2524 (fax)
Kmorgan@pck-law.com (e-mail)
*Counsel for Plaintiffs

Dated: December 26, 2018

Robert J. Olson
William J. Olson

Jeremiah L. Morgan
Herbert W. Titus
William J. Olson, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA 22180-5615
703-356-5070 (telephone)
703-356-5085 (fax)
wjo@mindspring.com (e-mail)
*Of counsel*