UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUN OWNERS OF AMERICA, INC.,

GUN OWNERS FOUNDATION,

VIRGINIA CITIZENS DEFENSE LEAGUE,

MATT WATKINS,

TIM HARMSEN, and

RACHEL MALONE,

                  Plaintiffs,

v.

MATTHEW WHITAKER, in his official capacity as
Acting Attorney General of the United States,

U.S. DEPARTMENT OF JUSTICE,

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, and

THOMAS E. BRANDON, in his official capacity as Acting
Director, Bureau of Alcohol, Tobacco, Firearms, and Explosives,

                  Defendants.

Case No. 1:18-cv-01429

Hon. _____

MEMORANDUM IN SUPPORT
OF PLAINTIFFS' MOTION FOR
A PRELIMINARY INJUNCTION

Kerry L. Morgan* (P32645)
PENTIUK, COUVREUR & KOBILJAK, P.C.
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
Main: (734) 281-7100
F: (734) 281-2524
kmorgan@pck-law.com
*Counsel for Plaintiffs

Robert J. Olson
William J. Olson
Jeremiah L. Morgan
Herbert W. Titus
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA 22180
T: (703) 356-5070
F: (703) 356-5085
wjo@mindspring.com
Of counsel

## TABLE OF CONTENTS

Page

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    Preliminary Injunction Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   Plaintiffs Are Likely to Succeed on Their APA Claims. . . . . . . . . . . . . . . . . . . . . . . . 3

      A.   Bump Stocks Are Not Machineguns, regardless of whether this Court
           Applies the Statutory Language "Single Function of the Trigger" or ATF's
           "Single Pull of the Trigger" Statutory Revision. . . . . . . . . . . . . . . . . . . . . . . . . 5

           1.   A Bump Fire Stock Does Not Permit a Firearm to Fire More than
                One Shot by a <u>Single Function</u> of the Trigger. . . . . . . . . . . . . . . . . . . 5

           2.   A Bump Fire Stock Does Not Permit a Firearm to Fire More than
                One Shot by a <u>Single Pull</u> of the Trigger. . . . . . . . . . . . . . . . . . . . . . . 7

      B.   Firearms Using Bump Stocks Do Not Fire "Automatically". . . . . . . . . . . . . . . 10

           1.   Bump Fire Is Not an "Automatic" Process, but Instead Is
                Biologically Generated and Controlled. . . . . . . . . . . . . . . . . . . . . . . . . . 10

           2.   A Bump Stock Does Not Contain any "Self-Acting or Self-
                Regulating Mechanism."  In Fact, It Has No Internal Moving Parts
                at All. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

           3.   A Bump Stock Does Not Channel, Harness, Store, or Transmit
                Energy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      C.   Bump Fire Is Not Automatic Fire Simply because It "Mimics" Automatic
           Fire. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      D.   ATF's Proposed Application of Its Regulation Is Nonsensical, Banning
           Bump Stocks by Name, while Sanctioning Other Forms of Bump Fire. . . . . . . 17

      E.   The Noticed Regulation Could Be Used to Classify Semiautomatic
           Firearms as Machineguns. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

F.      Since the Noticed Regulation Is Clearly Contrary to an Unambiguous Statute, No Deference Is Permitted.  Even if It Were, ATF Has Provided No Reasoned Explanation for Its Sudden About-Face. . . . . . . . . . . . . . . . . . . . . . 20

III.    Plaintiffs Will Be Irreparably Harmed if the Noticed Regulation Is Allowed to Take Effect. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IV.    The Balance of Equities Weighs in Favor of Plaintiffs, and the Public Interest Supports Granting Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

A.      ATF Has Disclaimed Public Safety as a Justification. . . . . . . . . . . . . . . . . . . . . . 25

B.      The Public Interest Will Be Served by the Issuance of an Injunction. . . . . . . . . . 26

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65(a), Plaintiffs submit the following memorandum of law in support of their motion for a preliminary injunction.  Plaintiffs ask this Court to enjoin Defendants from enforcing their newly enacted regulation banning so-called "bump fire" rifle stocks.  *See* 83 *Fed. Reg.* 66514 (Dec. 26, 2018) ("Final Rule").  Unless enjoined, this regulatory ban will become effective on March 26, 2019.  It will transform at least 520,000 legally owned bump stocks into contraband — an unlawfully possessed and unregisterable machinegun.  It will require that these valuable items be surrendered or destroyed.  The Defendants' regulation will make mere possession will be a crime *ipse-dixit*, even if an unsuspecting owner never knew of the regulatory change.  That cannot be permitted.

For well over a decade, Defendants repeatedly and consistently have concluded that bump fire stocks do not meet the federal statutory definition as to what constitutes a machinegun, and thus are outside the purview of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to ban.  Virtually everyone has agreed with that conclusion, including ATF employees, both Republican and Democratic members of Congress, the ATF Association, and even the current head of ATF.  *See* Compl. ¶¶ 85, 88, 99 n.10.  Indeed, bump fire stocks were specially designed to fall outside the statutory definition of a machinegun, consistent with guidance issued by the ATF.  Nevertheless, Defendants now have departed from their past adherence to the statutory definition, switched their bump stock "classification" 180 degrees, and abandoned ATF's prior administrative rulings, all for one simple reason — earlier this year, President

1

Trump ordered that bump stocks be banned.[1]

In 2016, then-Judge Gorsuch lamented the cancer-like spread of the administrative state, opining that an agency should not be permitted to "reverse its current view 180 degrees anytime based merely on the shift of political winds...."  Gutierrez-Brizuela v. Lynch, 834 F.3d 1142, 1152 (10th Cir. 2016) (Gorsuch, J., concurring).  Yet that is precisely what has occurred here. The noticed regulation was enacted pursuant to a political decision, and is without justification in fact or law.  The bump stock ban is not, as ATF claims, an "interpretation" of the statute (Final Rule at 66517), but is instead based on a new and novel revision of the statutory text defining a machinegun.

ATF alleges that bump stocks permit semiautomatic rifles to "**mimic**" machineguns (Final Rule at 66516), and thus has decided to usurp the legislative function by rewriting the statutory language so that bump stocks **become** machineguns.[2]  ATF assumes it knows what Congress would have wanted it to do but, of course, Congress has chosen not to ban bump

---

[1]  ATF claims that "the President specifically directed [ATF] to **clarify** the legal status of bump-stock-type devices...."  Final Rule at 66528 (emphasis added).  That's putting it mildly. President Trump didn't order the agency to **investigate whether** bump stocks are machineguns, he **declared that** bump stocks **are** machineguns, and ordered ATF to ban them ("Today, I am **directing** the Department of Justice ... to propose for notice and comment a rule banning all devices that turn legal weapons into machineguns.")  Compl. ¶ 4 (emphasis added).

[2]  ATF has openly stated that "[t]his final rule is intended to interpret the definition of 'machinegun' ... **such that it includes** bump-stock-type devices...."  (Final Rule at 66543 (emphasis added)), thereby admitting that the noticed regulation was designed to reach a particular result, predetermined before the process was begun.  *See also* Final Rule at 66517 (noting that ATF was directed "as expeditiously as possible, to propose for notice and comment a rule banning" bump stocks).

2

stocks.[3]

The noticed regulation conflicts with the plain text of an unambiguous statute, is arbitrary and capricious, and cannot be sustained under the Administrative Procedure Act ("APA").  A preliminary injunction is necessary to enjoin the Defendants' usurpation of Congressional power, and to preserve the status quo for the owners of what ATF estimates to be 520,000 bump fire rifle stocks, until the challenge can be heard.

## ARGUMENT

**I.      PRELIMINARY INJUNCTION STANDARD.**

The elements for a preliminary injunction are:  "(1) the likelihood of the plaintiff's success on the merits, (2) whether plaintiff will suffer irreparable injury without the injunction, (3) the harm to others which will occur if the injunction is granted, and (4) whether the injunction would serve the public interest."  In re Eagle-Picher Industries, Inc., 963 F.2d 855, 858 (6th Cir. 1992).  In this Circuit, "these are factors to be balanced, not prerequisites to be met."  S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co., 860 F.3d 844, 849 (6th Cir. 2017). Additionally, "[t]he final two factors, harm to others and the public interest, 'merge when the Government is the opposing party.'"  Al-Sarih v. Sessions, 2018 U.S. App. LEXIS 2482, *4 (6th Cir. 2018).  Each factor weighs heavily in Plaintiffs' favor here.

**II.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR APA CLAIMS.**

ATF's claim that bump stocks are machineguns is contradicted by the plain and unambiguous text of 26 U.S.C. § 5845, defining a machinegun.  In addition to contradicting the

---

[3]  R. Shabad, "Proposed bans on bump stocks have stalled in Congress," CBS News (Nov. 6, 2017), https://www.cbsnews.com/news/proposed-bans-on-bump-stocks-have-stalled-in-congress/.

3

clear terms of an unambiguous statute, ATF's noticed regulation is arbitrary and capricious.  It is arbitrary, because it is founded on political pressure and demonstrably false factual assumptions, rather than on fixed rules, procedures, or law.  It is capricious, because its future precedential effect on other firearm accessories — and even semiautomatic firearms as a class — is unpredictable, and subject to political administrative whim.  In crafting the noticed regulation, ATF "has relied on factors which Congress has not intended it to consider," and has "offered an explanation for its decision that runs counter to the evidence before the agency" which is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *See* Radio Ass'n on Defending Airwave Rights v. United States DOT, 47 F.3d 794, 802 (6th Cir. 1995) (*citing* Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).  An agency regulation unmoored to the statute's actual text is the textbook definition of an arbitrary and capricious regulation, and one which exceeds the agency's statutory jurisdiction and authority.

Unlike some other federal circuits which are highly deferential to agency "interpretation," in this Circuit, "a reviewing court must take care not to merely rubber stamp agency decisions." *Id.*  Indeed, once the mechanical operation of a bump stock (including the shooter's indispensable manipulation thereof) is understood, it is clear that a bump stock is not a machinegun, under either the statute or as the noticed regulation defines it.  Federal law defines a machinegun as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, **automatically** more than one shot, without manual reloading, by a **single function of the trigger**.  The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a

4

> machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. [26 U.S.C. § 5845 (emphasis added); *see also* 27 C.F.R. §§ 447.11, 478.11, and 479.11.]

Importantly, "automatically" and "single function of the trigger" are separate and distinct requirements, both of which must be met in order for a device to constitute a machinegun. *See, e.g.*, Final Rule at 66553 (defining each element separately).

ATF's noticed regulation purports to flesh out the statutory definition by redefining "automatically" to be "functioning as the result of a **self-acting or self-regulating mechanism** that allows the firing of multiple rounds through a single function of the trigger," and redefining "single function of the trigger" to be "a **single pull** of the trigger." Final Rule at 66554. Armed with its new "interpretation," ATF claims that bump stocks qualify under this definition because they "**harness[] the recoil energy** of the semiautomatic firearm ... so that the trigger resets and continues firing **without additional physical manipulation** of the trigger by the shooter." *Id.* The following argument sections break down the statutory elements, along with ATF's regulatory concepts and, in each case, demonstrate that bump stocks do not fall under either Congress' 84-year-old statutory definition — and, surprisingly, do not even fall under ATF's new regulatory definition of machineguns.

A. **Bump Stocks Are Not Machineguns, regardless of whether this Court Applies the Statutory Language "Single Function of the Trigger" or ATF's "Single Pull of the Trigger" Statutory Revision.**

1. **A Bump Fire Stock Does Not Permit a Firearm to Fire More than One Shot by a <u>Single Function</u> of the Trigger.**

The National Firearms Act requires that, in order to be classified a machinegun, a firearm must fire "more than one shot ... by a **single function** of the trigger." 26 U.S.C. § 5845

(emphasis added).  By definition, a semiautomatic firearm does not operate in this fashion.[4]
Neither does a semiautomatic firearm equipped with a bump stock.  Vasquez Decl. to Complaint,
Doc. 1 ¶ 28(b).  When a bump stock is installed and used on a semiautomatic rifle, the rifle's
mechanical processes are unchanged.  Compl. ¶ 43;Vasquez Decl. ¶ 13(c).  With or without a
bump stock, the rifle fires one shot, and one shot only, each time the trigger is depressed and
reset.  **Click, bang, click; click, bang, click**.  Vasquez Decl. ¶ 13(a), 23.  On the other hand, a
machinegun will fire a series of shots when the trigger is depressed and held to the rear.  **Click,
bang, bang, bang, bang, click**.  Compl. ¶ 33.

A bump fire stock does not allow a firearm to fire more than one shot by a "single
function of the trigger."  Vasquez Decl. ¶ 8.  The only difference between traditional
semiautomatic fire and semiautomatic bump fire is that a bump stock helps a shooter make the
semiautomatic firing process occur more rapidly — but never automatically.  As even ATF
admits, bump stocks only "allow[] '**rapid fire**' operation of the **semiautomatic** firearm to which
they are affixed."  Final Rule at 66516 (emphasis added).

Properly understood, a "function" of a trigger refers to the mechanical process through
which a trigger goes when each shot is fired.  That is how ATF described it as recently as 2009,
in its National Firearms Act handbook, which states that the "'single function of the trigger'
portion of the definition **relates to the characteristics of the weapon** that permit full automatic
fire."  <u>ATF National Firearms Act Handbook</u>, U.S. Department of Justice, April 2009, Section
2.1.6, p. 11.  For instance, in the case of an semiautomatic AR-15 rifle (the most popular rifle in

---

[4]  The Supreme Court noted in <u>Staples</u> v. <u>United States</u>, 511 U.S. 600 (1994), that "[w]e
use the term 'semiautomatic' to designate a weapon that fires only one shot with each pull of the
trigger."  *Id.* at 602 n.1.

the United States and the most common rifle on which bump stocks are used), depressing the trigger releases the hammer, which impacts the firing pin, in turn striking and discharging the primer on a round of ammunition. Thereafter, the hammer is forced rearward by the reciprocating bolt, where it is captured by the disconnector. When the trigger is released by the shooter's finger, the hammer "resets" onto the trigger sear.[5] Depressing the trigger again starts the process again. This entire semiautomatic process occurs each and every time a round is fired using a bump stock. Thus, a bump stock fires one round for every "single function of the trigger."

**2.      A Bump Fire Stock Does Not Permit a Firearm to Fire More than One Shot by a <u>Single Pull</u> of the Trigger.**

In 2006, ATF began to move away from the statutory language "single function of the trigger." As ATF notes in its Notice of Proposed Rulemaking ("NPRM"), "ATF reached that conclusion [that] the best interpretation of the phrase 'single function of the trigger' includes[6] a 'single pull of the trigger.'" Final Rule at 66517. As ATF rationalizes, "ATF previously focused on the trigger itself ... but adopted a better legal and **practical** interpretation of 'function' to encompass the **shooter's activation** of the trigger." NPRM at 13447 (emphasis added). In other words, ATF moved away from the statutory term "function" (which describes what the trigger is doing), employing a very different term "pull" (which describes what the shooter is doing).[7] In

---

[5]  *See* https://www.youtube.com/watch?v=xh2FjzVVIZY.

[6]  ATF's NPRM stated that single function "**was**" single pull. NPRM at 10. However, the final rule states that single function "**includes**" single pull.

[7]  Armed with its new "interpretation" of the statute, ATF was able to convince the Eleventh Circuit in 2009 that "single function" of a trigger instead meant "single pull" by a shooter or, as that court put it, a "single application of the trigger by a gunman." <u>Akins</u> v. <u>United</u>

spite of this new "interpretation" of "function" to mean "pull," ATF has continued to classify devices based on their trigger's mechanical movement rather than the shooter's biological process.[8]

As explained above, "single function" should not be interpreted to mean "single pull," and this Court should decline to adopt ATF's interpretative revision of the statute. Yet, even if this Court were to side with ATF's "interpretation," and conclude that "single function" instead means "single pull," bump stocks **still would not be covered**, because they **operate through a rapid series of trigger pulls, not a single pull**.

In common parlance, "pull" means "to exert force upon" or "to use force in drawing, dragging, or tugging."[9]  It seems evident that a **shooter must physically touch a trigger in order to pull it**.  When using a bump stock, though, the shooter pulls the trigger once for each and every shot that is fired.  In fact, before starting a firing sequence using a bump stock, the **shooter's finger is not touching the trigger**.[10]  Rather, the shooter inserts his trigger finger

---

States, 312 Fed. Appx. 197, 200 (11th Cir. 2009).  Additionally, the Supreme Court in Staples appears to use the words "function" and "pull" interchangeably, at least in *dicta* (*id.* at 602-03), but the issue was never briefed or argued in that case.  Now, ATF proposes through regulation to formally re-define the statutory term "single function" to mean "single pull."  Final Rule at 66554.

[8]  *See, e.g.,* Exhibit 1 (noting that various submitted samples are not machineguns because they perform "no automatic **mechanical function**....").  Of course, "mechanical" means "caused by, resulting from, or relating to a process that involves a purely physical **as opposed to a** ... **biological** ... **process**."  https://www.merriam-webster.com/ dictionary/mechanical (emphasis added).

[9]  https://www.merriam-webster.com/dictionary/pull.

[10]  On October 28, 2017, ATF Acting Director Thomas Brandon sent an e-mail with a link to a *New York Times* article, claiming that it contained a "great animation for understanding bump stocks."  Exhibit 34.  That animation clearly shows the shooter's finger repeatedly

through the trigger guard, and places it on the bump stock's finger rest.  *See* Exhibit 34.  The

shooter then applies (and maintains) an **appropriate amount**[11] of forward pressure on the

firearm with his non-shooting hand, which causes the entire firearm to slide forward, **bringing**

**the trigger finger into contact with the trigger**, depressing the trigger, and firing a single

round.  Compl. ¶ 36; Vasquez Decl. ¶ 11-12.  Immediately thereafter, the recoil of the firearm

**physically separates the trigger finger from the trigger**, allowing the trigger to reset.  Compl.

¶ 38; Vasquez Decl. ¶ 11.  Thereafter, the constant forward pressure by the support hand again

pulls the firearm forward again, starting the process over.  *Id.*  The process is repeated, in rapid

succession — "bumping" the shooter's finger onto and off of the trigger — until the shooter

stops applying the forward pressure with his support arm, or the ammunition runs out.  Vasquez

Decl. ¶ 12.  Importantly, after each time the rifle fires and recoils, the force of the recoil

overcomes the force of the forward pressure, causing the shooter's finger to physically lose

contact with the trigger, which is what permits the trigger to "reset."  Vasquez Decl. ¶ 11.

    The bump fire process is, quintessentially, semiautomatic fire, even if rapidly occurring.

Vasquez Decl. ¶ 13(c).  Even ATF appears to agree that bump stocks do not function by a "single

pull" of the trigger.  In fact, ATF notes that a bump stock "permit[s] the **trigger to lose contact**

**with the finger** and manually reset."  Final Rule at 66517 (emphasis added).  How, then, is the

---

contacting and **separating** from the trigger during a cycle of bump firing.
https://www.nytimes.com/interactive/2017/10/04/us/bump-stock-las-vegas-gun.html; *see also*
https://slidefire.com/how-it-works/; *see also* http://www.slidefire.com/img/
how-it-works/rest-trigger-finger.jpg.

    [11]  If the shooter applies **too much** forward pressure with the support hand, the recoil will
not separate the trigger and trigger finger, the trigger will not reset, and the firearm will not fire
again.  If the shooter applies **too little** forward pressure with the support hand, the firearm will
reset but will not be pulled forward hard enough to fire again.

finger still engaged in a "single pull" of the trigger if it has "lost contact" with the trigger? ATF admits that "multiple rounds [are] fired," **not** when the shooter maintains **pressure on the trigger**, but instead when the shooter maintains "constant rearward pressure **on the device's extension ledge**...." Final Rule at 66516 (emphasis added). In other words, ATF admits (factually, buried in its analysis) that a sequence of bump fire involves multiple, separate trigger pulls, yet concludes (legally, prominently in its introduction and conclusion) that bump fire involves a "single pull of the trigger."

At bottom, ATF's "single pull" language does not help its case against bump fire stocks, since bump fire is comprised not of a "single pull of the trigger," but rather of a series of rapid, individual "pulls" of the trigger — one for each round that is fired. In no sense can one be described as "pulling" a trigger when he's not even touching it.

**B.    Firearms Using Bump Stocks Do Not Fire "Automatically."**

In addition to the statutory requirement that a machinegun fire more than one round by a "single function of the trigger," the law also requires that it shoot "automatically." Yet under either the statutory language, or ATF's new regulatory definition, a bump stock does not qualify. In its noticed regulation, ATF noted that "[p]rior ATF rulings ... have not provided substantial legal analysis regarding the meaning of the term 'automatically'...." Final Rule at 66532. ATF now has created a regulatory definition, yet bump stocks clearly do not even fall within the definition the agency has created specifically to ban them.

**1.    Bump Fire Is Not an "Automatic" Process, but Instead Is Biologically Generated and Controlled.**

The word "automatic" commonly means "a device or process[] working by itself with

**little or no direct human control**."[12]  The Supreme Court describes the automatic process in a machinegun as "once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted."  Staples at 603.  Indeed, by applying a one-time, continual squeeze of the trigger, a true machinegun will continue to fire, recoil, reset, and fire again, until the trigger is released.  So long as the trigger is depressed, that continual operation is "automatic" — *i.e.*, it does not require a continuous control, direction, intervention, or guidance by a human being.  Absolutely no forward pressure, rearward pressure — nothing except a squeeze of the trigger — is needed or required to fire a machinegun automatically.

On the other hand, if a shooter attempts to shoot a rifle equipped with a bump stock, but without applying forward pressure with the support hand, the rifle will fire but a single shot.  As ATF correctly notes, for a bump fire stock to function properly, the shooter must maintain simultaneous "constant forward pressure" coupled "with constant rearward pressure" on the firearm (much like the forces applied when shooting a bow and arrow).[13]  Final Rule at 66516.  It is only when the proper combination of these forces is applied that a bump stock equipped firearm will rapidly "bump" the trigger onto and off of the trigger finger.

Again, without this critical element of **human control**, the rifle to which the bump stock

_____

[12] https://en.oxforddictionaries.com/definition/automatic.

[13] What's more, not only must a shooter apply opposing forces to the firearm, he must apply a **precise amount** of force.  ATF's April 2, 2012 letter called this an "appropriate amount" of force, ATF's June 26, 2008 letter called it "intermediate pressure," and ATF's April 6, 2017 letter twice noted that it was critical that "sufficient forward pressure" be applied.  In other words, using a bump fire stock requires practice and skill to accomplish rapid, semiautomatic bump fire.  By way of contrast, firing a machinegun just requires a shooter to pull and hold the trigger down.  The entire purpose of the bump stock is to make a somewhat difficult technique somewhat easier.  Either way, the point is that nothing about the operation of a bump stock is automatic, but rather use of a bump stock is a **learned technique**.

is attached would, at best, fire a single round (*see* Exhibit 23), or may even experience a malfunction.  It is **only with human input and intervention** — applying simultaneous opposing forces — that the bump stock can achieve rapid semiautomatic fire.  Vasquez Decl. ¶ 13(c).  By definition, something automatic requires little or no human involvement, yet a bump stock requires a series of "continuous multiple inputs" by the shooter.  *See* Exhibit 20.

### 2. A Bump Stock Does Not Contain any "Self-Acting or Self-Regulating Mechanism."  In Fact, It Has No Internal Moving Parts at All.

ATF's Final Rule purports to define "automatically" as "functioning as the result of a **self-acting or self-regulating mechanism** that allows the firing of multiple rounds through a single function of the trigger...."  Final Rule at 66554 (emphasis added).  A bump stock, however, is **neither** self-acting **nor** self-regulating and, as explained above, requires **exclusively human control** in order to function.[14]  As such, there is no "mechanism" within it at all.  Vasquez Decl. ¶ 28(f).  A "mechanism is "an assembly of moving parts **performing a complete functional motion**...."[15]  But a bump stock is nothing more than an injection molded piece of plastic.  As discussed, it is the shooter who "completes" the "functional motion" of bump fire — providing forward pressure to counteract recoil's rearward pressure.  Black's Law Dictionary defines "mechanism" as "[c]omponents, elements, or parts, **and the associated energy** and information flows enabling a machine, process, or system to achieve its intended result...."[16]  Again, as discussed, it is the shooter who provides forward pressure — the "energy" that

---

[14]  *See* https://newbostonpost.com/wp-content/uploads/2017/10/bump_stock-780x439.png

[15]  https://www.dictionary.com/browse/mechanism (emphasis added).

[16]  https://thelawdictionary.org/mechanism/ (emphasis added).

"enabl[es the bump fire process] to achieve its intended result."

Thus, if there is any "mechanism" involved in bump firing with a bump fire stock, it is biological, not mechanical. The "mechanism" that permits bump firing is human — a shooter generating counter opposing forces, reacting to and utilizing the recoil energy of the firearm. As ATF admits, numerous prior agency rulings in the past correctly recognized that bump stocks "lacked any 'automatically functioning mechanical parts or springs and perform[ed] no mechanical function[s] when installed'...." Final Rule at 66518.

ATF admits that bump stocks operate "in conjunction with the shooter's maintenance of pressure...." Final Rule at 66516. Predecessor stock designs that operated "through a mechanism like an internal spring" have been banned since 2006. *Id.* In other words, ATF admits that certain prior stocks utilized a spring as the "mechanism" for rapid fire, but that modern bump stocks use a human being as the "mechanism" for rapid fire. There is certainly no statutory authority which permits ATF to regulate biological organisms or the physical forces they exert.[17] Yet those are the indispensable ingredients in bump firing — a bump fire stock is useful, but not necessary. ATF attempts to circumvent that reality by outlawing an accessory that is helpful in performing a shooting technique. ATF's admission that bump fire with a bump stock requires an "appropriate amount" of force, "intermediate pressure," and "sufficient forward pressure" are not legal concepts. No statute or regulation is capable of defining how much is enough. These concepts do not describe a "part" or "combination of parts" as defined in 26 U.S.C. § 5845. That is because, again, bump fire does not occur because of a bump fire stock, but because of a human

---

[17] Perhaps this is why some in the firearms community have jokingly called on ATF to register body parts as machineguns. *See* https://www.facebook.com/militaryarms/videos/1837117376300053/.

being — and indeed, as ATF admits, can occur entirely without a bump stock.  Final Rule at 66551 ("individuals wishing to replicate the effects of the bump-stock-type devices could also use rubber bands, belt loops," *etc*.).  Indeed, many gun owners can bump fire "from the hip"[18] or from the shoulder.[19]  They can bump fire rifles, pistols,[20] and even shotguns — all without bump stocks.[21]  Like any other type of bump firing of a semiautomatic weapon, a bump stock changes absolutely nothing about the mechanical operation of the firearm.[22]

### 3.    A Bump Stock Does Not Channel, Harness, Store, or Transmit Energy.

In 2013, ATF correctly admitted that bump stocks "require[] **continuous multiple inputs by the user for each successive shot**."  Exhibit 20.  As recently as 2016, ATF noted in litigation that "[b]ump firing **requires the shooter** to manually and simultaneously pull and push the firearm **in order for it to continue firing**."  Brief for ATF in Support of Motion for Summary Judgment and in Opposition to Plaintiffs Motion for Summary Judgment, ECF No. 28, at 21 (July 27, 2017).  Now, in 2018, ATF suddenly has claimed that bump stocks operate "**without additional physical manipulation of the trigger by the shooter**."  Final Rule at 66514.  Both statements cannot be true.  What's more, this is not simply a case of an agency reversing itself on

---

[18]  https://www.youtube.com/watch?v=U-nUA52BS3c.

[19]  https://www.youtube.com/watch?v=7RdAhTxyP64.

[20]  https://www.youtube.com/watch?v=8Zo5ju4EVLc.

[21]  https://www.youtube.com/watch?v=A6igdGbv7uE.

[22]  ATF personnel admit that "[t]he classification of [bump stocks] depends on whether they mechanically alter the function of the firearm to fire fully automatic...." https://www.nytimes.com/interactive/2017/10/04/us/bump-stock-las-vegas-gun.html.  As demonstrated herein, they do not.  *See* Vasquez Decl. ¶ 13(c).

its interpretation of the law.  Rather, **ATF has reversed itself on the facts**.  No doubt recognizing that no one reasonably could conclude that bump stocks operate as machineguns, ATF finds it necessary to confuse and obfuscate the way bump stocks operate.

ATF now claims that a bump stock "channel[s]" and "harnesses and directs the firearm's recoil energy to slide the firearm **back and forth** so that the trigger automatically re-engages by 'bumping' the shooter's stationary finger."  Final Rule at 66516.  That statement is patently false to the point of being absurd.  The recoil of a firearm is a **rearward** action.  How, then, is the firearm driven back **forward** by a bump stock, which ATF has admitted has no springs, hydraulics, batteries, or other mechanism to store or transmit energy?  The answer is simple — ATF's statement is untrue.

Without biological input, the recoil of a shot would certainly drive the firearm "**back**" into a bump stock, but it certainly would not slide the firearm "**forth**" again — the shooter does that.  That's why a bump stock equipped firearm cannot be fired with one hand.  Vasquez Decl. ¶ 13(d).

Bump stocks simply do not operate how ATF claims.  Bump stocks "harness" nothing, they are just a piece of plastic.  They contain no springs, batteries,[23] capacitors, generators, etc. Without the shooter, the energy that causes the firearm to slide "back" into the bump stocks is not harnessed, stored, or retransmitted — it is simply lost.  It is the bump-firing shooter who harnesses rearward energy and counteracts it with forward energy.  It is the shooter's body that

---

[23] *See* Final Rule at 66518 n.4.

absorbs the recoil energy of the firearm, and counteracts that force with biological forces.[24]

ATF attempts to single out bump stocks from other forms of bump fire, claiming that when bump firing **without** using a bump stock, "no device is present to capture and direct the recoil energy; rather, the shooter must do so." Final Rule at 66533. This statement is misleading, to say the least, and intentionally dishonest at worst. ATF knows full well that **all forms of bump fire** — with or without a bump stock — require the shooter to capture and direct the recoil energy: the shooter's arms absorb the recoil by acting as a **human compression spring** (pushing forwards while pulling rearwards). Anyone who has ever fired a rifle with a bump stock can feel this happening — they can feel their arms absorbing the recoil energy of the firearm.

When bump firing, the recoil energy of a shot "compresses" or "loads" the human spring rearward (causing the trigger finger to momentarily lose contact with the trigger), until the human spring "rebounds" forward (causing the trigger finger to again contact the trigger). This is why a bump stock is **useful** — but not at all **necessary** — for bump firing.

C.      **Bump Fire Is Not Automatic Fire Simply because It "Mimics" Automatic Fire.**

In its lengthy and internally contradictory Final Rule, ATF rightly admits that bump stocks do no more than "allow[] 'rapid fire' operation of the semiautomatic firearm to which they are affixed." Final Rule at 66516. Later, ATF asserts that bump stocks "**mimic** automatic fire,"

---

[24] In 2006, when the ATF reclassified the Akins Accelerator as a machinegun, it did so **because** the stock **utilized a spring** to harness recoil energy. ATF Ruling 2006-2. A later ATF letter on June 26, 2008 noted that a device — **without such a spring** — **would not be a machinegun,** because it has no way to automatically harness the recoil energy, and thus no way to fire automatically. *See* Exhibit 14. The current bump stocks at issue here have no springs.

apparently because they help a shooter fire rapidly, albeit semiautomatically. *Id.* (emphasis added).  In 2011, ATF described bump fire as a "vernacular expression" meaning "rapid trigger manipulation to **simulate** automatic fire."  Exhibit 15 (emphasis added).  Finally, just a few months before the Las Vegas shooting, ATF maintained that "'[b]ump firing' is the process of using the recoil of a semiautomatic firearm in rapid succession, **simulating the effect of an automatic firearm** when performed with a high level of skill and precision by the shooter." Freedom Ordnance Mfg., Inc. v. Brandon, 3:16-cv-00243 (U.S.D.C. S.D.IN), ECF #28, p. 21.

However, in its Notice of Proposed Rulemaking, ATF rationalized that rapid semiautomatic fire using bump stocks "present[s] the same risk to public safety that Congress has already deemed unacceptable...."  *Id.* at 21.  Thus, the agency seemed to conclude that it must ban bump stocks on behalf of Congress — because they are similar in effect to machineguns. But Congress did not outlaw **semiautomatic firearms with accessories that mimic automatic fire** — it outlawed unregistered **machineguns**.  ATF is limited to the technical definition given by Congress in the National Firearms Act; it is not authorized to legislate in order to give effect to what it believes to be the intent of Congress to have been 84 years ago.

ATF conflates function and effect, concluding that because it supposedly quacks like a duck, it must be a machinegun.  *See* Vasquez Decl. ¶ 28(h).  That is not legal reasoning based on statutory language; rather it is the implementation of an agenda by political forces.

> **D.     ATF's Proposed Application of Its Regulation Is Nonsensical, Banning Bump Stocks by Name, while Sanctioning Other Forms of Bump Fire.**

Perhaps in an attempt to placate the shooting community, ATF explained that bump fire can continue legally even if bump stocks are banned demonstrating that bump fire is a technique,

not a device.  ATF alleges that, in order to continue bump firing without bump stocks, gun owners "could also use rubber bands [or] belt loops ... this would be their alternative to using bump-stock-type devices."  Final Rule at 66551.  But it is simply incomprehensible how ATF could claim that, under its new definition, bump fire using a plastic bump stock is illegal, while bump fire using a rubber band would remain legal.[25]  ATF attempts to distinguish bump stocks from belt loops, claiming that "bump-stock-type devices are objectively different from items such as belt loops that are designed for a different primary purpose but can serve an incidental function of assisting with bump firing."  Final Rule at 66533.  Of course, that's a distinction without a difference — the statute outlaws "any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."  26 U.S.C. § 5845(b).  If a person was bump firing using a belt loop, not only would he be "possessing" machinegun parts under ATF's new regulation — he would have actually converted his rifle into an illegal machinegun.  ATF demonstrates the absurdity of its position by trying to excise and outlaw bump stocks while leaving rubber bands and belt loops unregulated.

As explained above, a bump stock has no "self-acting or self-regulating mechanism" that "harness[es] the recoil energy of the semiautomatic firearm," whereas it would be far easier to argue that a rubber band fits this definition.  Indeed, there is seemingly no difference between an Akins Accelerator's harnessing the **compression** of a spring (illegal, according to ATF), and bump firing harnessing the **elongation** of a rubber band (legal, according to ATF).  Indeed, ATF

---

[25] For an example of bump firing a semiautomatic rifle using a rubber band, *see* https://www.youtube.com/watch?v=PVfwFP_RwTQ.

actually claims that "the term 'pull' can be analogized to 'push'...."[26]  And "ATF senior firearms

enforcement officer Max Kingery ... compared it [using a bump stock] to stretching a rubber

band."[27]

Moreover, unlike with a bump stock where the trigger and finger are physically separated

after each shot, using a rubber band would mean that a shooter's finger need never leave the

trigger during a course of fire — what ATF might call a "single pull of the trigger."[28]  In other

words, a rubber band would fit far better within ATF's proposed definition, arguably meeting

each of the elements that a bump stock fails.  The fact that ATF would outlaw bump stocks while

sanctioning use of rubber bands further demonstrates the level to which the agency has gone to

bend over backwards to implement its marching orders.

### E.    The Noticed Regulation Could Be Used to Classify Semiautomatic Firearms as Machineguns.

ATF's new regulation raises a host of questions about its future application.  For

example, if a bump stock is now suddenly a machinegun, that also makes it a firearm.  Yet a

bump stock needs to be installed on a firearm in order to function.  That would mean that a

person would need to have two "firearms" to make one gun?  Or, what happens if a person puts a

bump stock on a registered NFA M16 — a rifle that actually fires automatically, multiple rounds

---

[26]  Final Rule at 66518 n.5.  In its proposed rulemaking, ATF had gone even further, arguing that "the term 'pull' is **interchangeable with** ... push."  NPRM at 10 n.6.

[27]  D. Freedman, "Machine-gun-like device part of ban," CT Post, Jan. 31, 2013, https://www.ctpost.com/local/article/Machine-gun-like-device-part-of-ban-4237269.php.

[28]  Lest ATF attempt to ban rubber bands, a rubber band would still not be a machinegun, because it would not convert the mechanical operation of the firearm, and thus would still fire only one shot "through a single function of the trigger."

with a single function of the trigger?  Has **one** rifle now become **two** machineguns requiring separate registrations?  Or is the status of the bump stock negated by the status of the M16?

Next, what happens to, say, an AR-15 rifle that for a decade has sported a bump stock, pursuant to ATF's blessing?  ATF has claimed that bump stocks "convert an otherwise semiautomatic firearm into a machinegun."  Final Rule at 66514.  In other contexts, ATF has taken the position that "once a machinegun, always a machinegun."[29]  Would it be ATF's position in the future that every firearm in the United States that has ever housed a bump stock is now forever an illegaly converted machinegun that must be destroyed or turned in?

Finally, is there any limiting principle that would keep ATF from using its new regulation to target semiautomatic firearms as a class?  According to ATF, a bump stock is a machinegun because it argues it "function[s] as the result of a self-acting or self-regulating mechanism...."  Final Rule at 66554.  Of course, a bump stock doesn't do this, but a semi-automatic firearm certainly does.  Compl. ¶ 109.  Also, ATF argues that a bump stock is a machinegun because it allegedly "harness[es] recoil energy...."  Final Rule at 66554.  Again, a bump stock doesn't do this, but a semiauomatic firearm does.  Compl. ¶ 113.  In other words, semiautomatic firearms themselves fit better than a bump stock under ATF's new definition of a "machinegun."  What assurance does anyone have that in two or six years, under a different administration, ATF won't seek to ban the most popular semiautomatic rifles in America, calling them machineguns?

**F.    Since the Noticed Regulation Is Clearly Contrary to an Unambiguous Statute, No Deference Is Permitted.  Even if It Were, ATF Has Provided No Reasoned Explanation for Its Sudden About-Face.**

---

[29]  *See* <u>F.J. Vollmer Co.</u> v. <u>Magaw</u>, 102 F.3d 591, 598 (D.C. Cir. 1996) ("we find no reasonable basis for ... the Bureau's ... once-a-machinegun-always-a-machinegun interpretation of the Firearms Act.").

As Plaintiffs have argued above, federal law is perfectly clear as to what constitutes a machinegun.  Defendants apparently agree, since they argue that there is a "plain meaning of [the statute's] terms," and arguing that, "**even if** those terms are ambiguous, this rule rests on a reasonable construction of them."[30]  Final Rule at 66527 (emphasis added).  In other words, ATF apparently believes the statute is clear and, indeed, ATF's regulations have always parroted the statute.  Now, however, the agency apparently has no choice but to act, in order to make everything even clearer.  So clear, in fact, that bump stocks allegedly are now clearly machineguns, whereas a year ago they so clearly were not.  ATF's final rule is clear as mud.

The Supreme Court in Chevron USA, Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), stated that "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. at 843-43.  Until now, the ATF has flatly and consistently ruled that a bump stock is not a machinegun and, when affixed to a semiautomatic firearm, does not make that firearm fire automatically.  In numerous classification letters, ATF has insisted that the statute unambiguously allows the addition of a bump stock to a semiautomatic firearm — without expressing any doubt, reservation, or making qualifications to its conclusion.  Members of Congress knew of these rulings, but Congress never acted to change them.  Indeed, it was not until well after the October 1, 2017 Las Vegas shooting that any ATF official ever said otherwise.  Now, in a sudden about-face, ATF has bowed to its political masters, "reinterpreting"

---

[30]  ATF claims that "[t]he Department believes that this rule's interpretations of 'automatically' and 'single function of the trigger' in the statutory definition of 'machinegun' accord with the plain meaning of those terms."  Final Rule at 66527.  Yet what ATF does not allege is more telling than what it does.  ATF never alleges that it's conclusion that "'machinegun' includes a bump-stock-type device" comports with the statute.

the statute to fit a political agenda.  Yet capitulation to political pressure does not warrant the

kind of deference contemplated by the <u>Chevron</u> doctrine, especially when the agency itself has

admitted the statute is clear.

Moreover, <u>Chevron</u> does not sanction an agency when it exceeds its delegated powers.

By statute, Congress has clearly specified what elements make a firearm into a machinegun.

ATF is powerless to expand on that definition — particularly a scenario where classifying an

item as a machinegun results in it becoming contraband, and its owner subject to punishment as a

felon, and loss of his Second Amendment rights.  As Justice Stevens by detailed and specific

language explained, the powers delegated to ATF are much more modest:

> [A]n agency to which Congress has delegated policymaking responsibilities may,
> **within the limits of that delegation**, properly rely on the incumbent
> administration's views of wise policy to inform its judgments.  [<u>Chevron</u> at 865
> (emphasis added).]

Simply put, while the President may work within the limits of a statute to achieve his political

goals, he may not unilaterally expand the definition of a statutory term any more than ATF may

do so.  Yet that is precisely what has occurred here.  Any argument by the government that the

statute is ambiguous would be a complete reversal of many decades of the agency's position,

would be offered solely to trigger <u>Chevron</u> deference, and should be viewed with great suspicion

— and really should be rejected outright.

Here, ATF even finds it necessary to discredit its own prior rulings, claiming that its past

decisions "[b]etween 2008 and 2017 ... did not include extensive legal analysis" and "d[o] not

reflect the best interpretation of 'machinegun'...."  Final Rule at 66514.  In other words, the

agency argues that for many years it has failed to properly do its job — until now, of course.

This Court should reject ATF's invitation to disregard all its prior rulings as careless, nothing more than an oversight.  Indeed, if the agency to date has been careless, if not reckless, never bothering to figure out what actually constitutes a machinegun, would that failure not jeopardize prior criminal convictions based on the agency's "expert" opinion as to which weapons constitute machineguns?  It should be extremely difficult for any court to accept and ratify ATF's surprising position that in the past it has acted recklessly and lawlessly.

Lacking any credible reason for its abrupt shift in "interpretation," ATF has failed to provide a sufficiently "reasoned explanation" for its extreme deviation from the language of the statute, not to mention the position that it took repeatedly and consistently over a period of more than a decade.

## III.   PLAINTIFFS WILL BE IRREPARABLY HARMED IF THE NOTICED REGULATION IS ALLOWED TO TAKE EFFECT.

In this circuit, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay....  This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere 'possibility' of success on the merits."  <u>Michigan Coalition of Radioactive Material Users, Inc.</u> v. <u>Griepentrog</u>, 945 F.2d 150, 153-154 (6th Cir. 1991) (citations omitted).  Based on the analysis set out above, Plaintiffs believe they have shown an exceedingly strong likelihood of success on the merits of their APA claims, as ATF's noticed regulation is clearly contrary to an unambiguous statute, and thus Plaintiffs' burden under this prong should be minimal.  Even so, Plaintiffs are at imminent risk of suffering significant harm if the noticed regulation takes effect.  *See* Verified Declarations with Complaint, Doc. 1, of Pratt, Van Cleave,

Watkins, Harmsen, and Malone.

ATF notes that "[t]his final rule requires the destruction of existing" bump stocks.  Final Rule 66549.  As Plaintiffs alleged in their complaint, they "will be irreparably harmed if the noticed regulation is permitted to take effect."  Compl. ¶ 16.  Not only will they lose the monetary value of their possessions (through forced surrender, confiscation, or destruction), but also they will lose the use and enjoyment of those items, along with the ability to keep and bear firearms equipped with bump stocks.  Indeed, bump stocks are integral components to firearms, and thus the Second Amendment right to keep and bear arms is implicated by their prohibition.

Finally, anyone who retains a bump stock past March 26, 2019, thinking he is protected by a copy of the ATF approval letter included with most bump stock shipments, will be at risk of felony prosecution, even if unaware of this sudden change in regulation.  Compl. ¶ 4.  What's more, the harm to Plaintiffs is imminent — the noticed regulation goes into effect on March 26, 2019, which provides Plaintiffs and those like them with minimal time to decide what to do with their bump stocks.  Indeed, to avoid risk of inadvertently committing a felony, it is highly likely that many bump stock owners will make the decision to destroy their property far in advance of the effective date, an irreversible harm should this Court later decide that ATF has acted unlawfully.

Presumably, ATF will not dispute that Plaintiffs meet the criteria for imminent and irreparable harm.  As ATF has explained, there will be significant economic costs from this regulation, including:  (i) the "lost value from no longer being able to possess or use the devices" (Final Rule at 66546), which ATF estimates to number 520,000, valued at up to $102 million (*see* Final Rule at 66547); (ii) the "value of foregone future sales over 10 years," estimated at

$198.9 million (Final Rule at 66549); and (iii) the "disposal cost associated with the need to destroy the devices" (Final Rule at 66546) which ATF estimates at $9.4 million (Final Rule at 66551).  ATF also notes that "there will be a potential loss of wages from employees losing jobs from loss of manufacturing," but ATF does not attempt to estimate this cost, since it alleges "the extent to which they will be unable find replacement jobs is **speculative**."  Final Rule at 66546 (emphasis added).  It is not entirely clear how ATF's numbers add up, but all told the agency estimates that "the rule will have an annual effect on the economy of $100 million or more."  Final Rule at 66543.  A share of this total cost will be born by Plaintiffs, their members, and supporters.

## IV.   THE BALANCE OF EQUITIES WEIGHS IN FAVOR OF PLAINTIFFS, AND THE PUBLIC INTEREST SUPPORTS GRANTING INJUNCTIVE RELIEF.

### A.   ATF Has Disclaimed Public Safety as a Justification.

Typically, the government will claim that the balance of the equities favors the government's "compelling" interest in "public safety," a phrase that repeated *ad nauseam* to justify all sorts of intrusive governmental laws and regulations, especially those infringing the right to keep and bear arms.  But in this case, ATF has expressly disclaimed that rationale.  In fact, in response to comments arguing that bump stocks should be banned to protect public safety, ATF replied that "[t]he Department disagrees that ATF seeks to regulate bump-stock-type devices merely because they were, or have the potential to be, used in crime."  Final Rule at 66528.  Rather, ATF claims that its regulation "is instead **based only upon** the functioning of the device and the application of the relevant statutory definition."  *Id*. at 66529 (emphasis added).

Bump stocks have been legal to own for well over a decade.  A preliminary injunction

would serve only to preserve that status quo as it has existed for years.  Since ATF began its process designed and intended to outlaw bump stocks, nearly one year has passed, and the sky has not fallen.  The agency certainly has not worked with all deliberate speed to enact the noticed regulation, or claimed that any emergency necessitates speedy implementation (giving 90 days for compliance with the regulation, three times the statutory minimum).  ATF led gun owners on for years, telling them it was perfectly lawful to own bump stocks — certainly the agency cannot now reasonably object to a temporary injunction to preserve that status quo.

### B.    The Public Interest Will Be Served by the Issuance of an Injunction.

The interests at stake in this litigation begin with plaintiffs' individual liberty and property interests, but do not end there.  The noticed regulation would directly and adversely affect the liberty and property interests of hundreds of thousands of American citizens who, for many years, have relied on long-standing ATF policy that bump stocks are legal to own, and that they do not convert a semiautomatic firearm into an automatic one.  That certainty and status quo should be preserved until the courts are able to determine whether bump stocks are, as ATF alleges, machineguns.  Moreover, to the extent that a bump stock owner does not own a replacement rifle stock, or cannot afford to obtain one, his rifle will be made far less useful and more difficult to shoot, affecting his right to keep and bear arms and thus his ability to engage in self-defense and other lawful purposes.  Courts should be highly suspect of agency "interpretations" that implicate enumerated constitutional rights in this way.

What's more, while ATF does not appear to claim that public safety will be served by a ban on bump stocks, it should be noted that in fact the opposite is true.  As ATF admits, semiautomatic bump fire is not (and cannot) be banned, and will continue through utilization of

rubber bands, belt loops, and skilled trigger fingers.  As noted above, bump stocks do not create bump fire, but rather, they permit **controlled and therefore safe** bump fire.  In order to be safe at the range, bump fire requires a large berm and careful attention to ensure that, as the muzzle rises with rapid fire, rounds are not discharged over the backstop.  Indeed, most shooting ranges prohibit bump fire for this very reason.

ATF now has publicly endorsed bump firing from the hip, using a belt loop, or even a rubber band — perhaps the **least controllable methods** of bump fire — yet it would ban bump stocks which permit a shooter to fully grasp the weapon and fire from the shoulder — perhaps the **safest method** of bump fire.  Again, bump stocks do not change bump fire, they make it safer.  ATF's arbitrary and capricious regulation, however, would essentially say "you can still drive your car, you just can't wear a seatbelt."

Also at stake is the people's interest in the proper exercise of the legislative powers vested in Congress by Article I, Section 1 of the U.S. Constitution and the executive powers vested in the President by Article II, Section 1.  This challenge is predicated on a regulation issued far in excess of statutory authority, and in violation of the Administrative Procedure Act, and "the public interest is served when administrative agencies comply with their obligations under the APA."  N. Mariana Islands v. United States, 686 F. Supp.2d 7, 21 (D.D.C. 2009).  Indeed,  "[t]here is an overriding public interest ... in the general importance of an agency's faithful adherence to its statutory mandate."  Jacksonville Port Auth. v. Adams, 556 F.2d 52, 58-59 (D.C. Cir. 1997).

Plaintiffs' central challenge is that neither the President nor the ATF has the power to change the statutory definition of a machinegun to include a bump stock device that the ATF

repeatedly ruled does not convert a semiautomatic firearm (clearly protected by the Second Amendment) into an automatic one (the keeping and bearing of which has not been litigated before the Supreme Court since <u>District of Columbia</u> v. <u>Heller</u>, 554 U.S. 570 (2008)) and <u>McDonald</u> v. <u>Chicago</u>, 561 U.S. 742 (2010).

Finally, the grant of a preliminary injunction would best serve justice and the rule of law. The nature of this case weighs heavily in favor of preserving the *status quo* until this Court makes its final decision. There is no good reason to confront the law-abiding firearms community with an unprecedented decision by the ATF — and the difficult personal choices that necessary follow. This has allowed for the more dispassionate and reasoned judgment of an Article III court, as to whether the familiar bump stock is to be banned as if it were a terrorist or gangster's weapon of choice — which it is not — rather than a law-abiding firearm enthusiast's accessory of choice — which it is.

## CONCLUSION

With a sweep of the purportedly acting[31] Attorney General's pen, ATF has ordered the destruction of hundreds of millions of dollars of lawfully owned property. ATF has refused to permit a temporary amnesty period pursuant to Section 207(d) of the Gun Control Act of 1968, whereby current bump stock owners would be permitted to register them under the NFA,

---

[31] Plaintiffs use the word "purportedly" because there currently is much disagreement as to whether Matthew Whitaker is legitimately the "acting" Attorney General of the United States pursuant to 5 U.S.C. § 3345(a)(3), or whether Deputy Attorney General Rod Rosenstein holds the authority pursuant to 28 U.S.C. § 508(a). *See, e.g.*, <u>Blumenthal</u> v. <u>Whitaker</u>, 18-cv-02664, U.S.D.C. for the District of Columbia; *see also* <u>Michaels</u> v. <u>Sessions</u>, No. 18-496 (pending in the Supreme Court on petition for writ of certiorari). In this motion, Plaintiffs currently do not contest the legitimacy of Mr. Whitaker's assignment, yet this Court should be aware that this ongoing legal dispute exists, should another court (or the Supreme Court) decide that Mr. Whitaker is not a legitimate office holder, and thus that the noticed regulation is void on its face.

claiming that the machinegun ban in 18 U.S.C. § 922(o) overrides and makes "amnesty registration of machineguns ... not legally permissible...."  Final Rule at 66536.

At every turn, ATF plays the victim, claiming that its hands are tied.  The agency simply had no choice but to decide that bump stocks are machineguns.  And the agency simply had no choice than to order their destruction and confiscation, rather than permitting grandfathering.

In reality, though, it is not ATF that has taken this position.  Rather, it is the Trump Administration and the Department of Justice that has ordered ATF into this awkward and uncomfortable position.  In doing so, ATF's own technical experts have been ignored and overruled.  Compl. ¶ 98.  In fact, Plaintiffs believe that ATF's own experts would testify that bump stocks are not machineguns under current law, were they permitted to do so.  Compl. ¶ 96.

This Court should reject ATF's invitation to expand the reach of 26 U.S.C. § 5845.  Bump stocks are not machineguns, under either the statutory text or ATF's regulatory expansion.  Plaintiffs respectfully request that this Court issue a preliminary injunction enjoining Defendants' enforcement of the new regulation.

Respectfully submitted,

Robert J. Olson
William J. Olson
Jeremiah L. Morgan
Herbert W. Titus
William J. Olson, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA 22180-5615
703-356-5070 (telephone)
703-356-5085 (fax)
wjo@mindspring.com (e-mail)
*Of counsel*

  /s/ Kerry L. Morgan
Kerry L. Morgan* (P32645)
Pentiuk, Couvreur & Kobiljak, P.C.
2915 Biddle Avenue
Edelson Building
Suite 200
Wyandotte, MI 48192
734-281-7100 (telephone)
734-281-2524 (fax)
kmorgan@pck-law.com (e-mail)
*Counsel for Plaintiffs*

Dated: December 26, 2018