UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUN OWNERS OF AMERICA, et al., )
      Plaintiffs, )
            )   No. 1:18-cv-1429
-v-            )
            )   Honorable Paul L. Maloney
WILLIAM P. BARR, et al.,     )
      Defendants. )
            )

### OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

On December 26, 2018, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), a part of the Department of Justice, published a Final Rule re-interpreting undefined terms found in the statutory definition of the word "machinegun." 83 Fed. Reg. 66514 (Dec. 26, 2018). As a result of the new interpretation, devices commonly known as "bump stocks" fall under the statutory definition of "machinegun." Members of the public are not allowed to possess machine guns manufactured after 1986. The Final Rule requires bump stock owners to dispose of their devices by March 26, 2019. After March 26, people who possess a bump stock can be charged with a felony.

Plaintiffs filed a lawsuit challenging the Final Rule. Along with their complaint, Plaintiffs filed a motion for a preliminary injunction (ECF No. 9) asserting a likelihood of success on their asserted violations of the Administrative Procedures Act (APA). Because Congress has not spoken on the matter and the statutory terms are ambiguous, Plaintiffs have not demonstrated a likelihood of success on the merits of their administrative law claims and their motion for a preliminary injunction must be denied.

I.

After Plaintiffs filed their motion for a preliminary injunction (ECF No. 9), Defendants filed a response (ECF No. 34) and Plaintiffs filed a reply (ECF No. 37). Defendants subsequently filed a Notice of Supplemental Authority. (ECF No. 38.) On February 25, 2019, Judge Dabney Friedrich of the District Court for the District of Columbia issued a memorandum opinion denying a motion for a preliminary injunction in the first-filed action challenging the Final Rule. *See Guedes v. AFT*, 356 F. Supp. 3d 109 (D.D.C. Feb. 25, 2019).[1] The Court takes judicial notice of Judge Jill Parrish's decision to deny a preliminary injunction in another challenge to the Final Rule, which was filed in the United States District Court in Utah. *See Aposhian v. Barr*, No. 2:19-cv-37, 2019 WL 1227934 (D. Utah Mar. 19, 2019). The Court held a hearing on this motion in this case on March 6, 2019.

The standards for a preliminary injunction are well-settled. Preliminary injunctions are governed by Rule 65. The decision to grant or deny a preliminary injunction falls within the district court's discretion. *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018). A court considers four factors when deciding whether to issue an injunction: (1) the moving party's chances of success on the merits; (2) the irreparable harm to the moving party without an injunction; (3) the substantial harm to the public were an injunction granted; and (4) whether an injunction would serve the public's interest. *Id.* (citing *S. Glazer's Distrib. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017)). Each of the four factors is

---

[1] As of the date of this Opinion, Westlaw had not yet included page numbers to Judge Friedrich's decision. Where necessary, this Court cites to the page numbers in the slip opinion.

not a prerequisite for an injunction, rather, courts must balance the factors when deciding whether to issue an injunction. *Great Lakes Brewing*, 860 F.3d at 849. When the government is a party, the final two factors for a preliminary injunction merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009) (involving a request for a stay); *Osorio-Martinez v. Attorney Gen. of the United States*, 893 F.3d 153, 178 (3d Cir. 2018) (involving a request for a preliminary injunction).

The Supreme Court has cautioned that a "preliminary injunction is an extraordinary remedy never awarded as of right" and that courts "'must balance the competing claims of injury and must consider the effect on each party with the granting or withholding of the requested relief.'" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). Where a plaintiff has no likelihood of success on the merits, a preliminary injunction should be denied. *Great Lakes Brewing*; *see Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.").

## II.

### A.

With the framework for the relief requested in Plaintiffs' motion in mind, the Court considers the historical and statutory backdrop for this dispute.

Prohibition, the "noble experiment," lasted from 1920 to 1933. The criminalization of intoxicating liquors created a lucrative, illegal market for alcoholic beverages. During these years, local gangs evolved and organized into criminal enterprises to exploit the demand for illegal alcohol. As these criminal organizations expanded, so too did the danger those

organizations posed to each other and the public. Among the weapons adopted and used by these criminal organizations were rapid-fire, hand-held guns, like the Thompson submachine gun, a weapon that began production in the 1920s and could fire several hundred rounds a minute. In 1929, Tommy guns were used in the infamous St. Valentine's Day Massacre, an incident where members of one Chicago gang dressed like police officers killed seven members of a rival gang. On February 20, 1933, Congress proposed the Twenty-First Amendment, which was adopted by the required number of States on December 5, and the experiment with prohibition ended. The threat to the public from criminal organizations, however, remained.

Congress began to address the threat that rapid-fire weapons pose to the public, an effort that has continued for decades. A year after Prohibition ended, Congress enacted the National Firearms Act (NFA) as an attempt to protect the public from the dangers posed by military-type weapons likely to be used for criminal purposes. *See United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) ("It is of course clear from the face of the Act that the NFA's object was to regulate certain weapons likely to be used for criminal purposes, . . . ."); *United States v. Peterson*, 476 F.2d 806, 810 (9th Cir. 1973) ("We have concluded from a perusal of the legislative history of the act that Congress was well aware of the rampant destruction of property and dangers to life and limb faced by the public through the use of converted military type weaponry and the street variety of homemade instruments and weapons of crime and violence."). Congress imposed a tax on both the making and the transfer of NFA firearms. Following the assassinations of Senator Robert Kennedy and Dr. Martin Luther King, in 1968 Congress amended the NFA by enacting the Gun Control Act

(GCA), which, among other things, expanded the NFA's definition of "machinegun." Finally, in 1986, Congress enacted the Firearm Owners Protection Act (FOPA), which makes it "unlawful for any person to transfer or possess" a newly manufactured machine gun. 18 U.S.C. § 922(c). The FOPA references the NFA's definition of machine gun. *Id.* § 921(a)(23). When ATF issued its Final Rule in December 2018, Congress defined "machinegun" as

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of such weapon, any part designed and intended solely and exclusively, or combination of parts designed an intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in possession or under the control of a person.

26 U.S.C. § 5845(b).

Congress has identified the Attorney General of the United States as the officer responsible for the administration and enforcement of Chapter 53 of Title 26 of the United States Code. 26 U.S.C. § 7801(2)(A)(i). The definition of "machinegun" is located in Chapter 53. Congress has also authorized the Attorney General to promulgate rules and regulations necessary to carry out the provisions of Chapter 44 of Title 18, the portion of the United States Code concerning the unlawful acts involving firearms. 18 U.S.C. § 926(a). In turn, the Attorney General has identified the Direction of the Bureau of Alcohol, Tobacco, Firearms and Explosives as responsible for administering, enforcing, and exercising the functions and powers of the Attorney General with respect to Title 18 Chapter 44 and Title 26 Chapter 53. 28 U.S.C. § 0.130(A)(1) and (2).

Exercising this delegated authority, ATF has provided both formal and informal guidance concerning firearm devices. In a few instances, ATF has promulgated Final Rules concerning a firearm device. *See, e.g.,* ATF Rul. 2006-2 (Final Rule determining the Akins Accelerator bump stock was a machine gun). More commonly, ATF issues informal letters. ATF encourages, but does not require, manufacturers to seek informal rulings or classification letters prior to offering devices for sale. *See Sig Sauer, Inc. v. Jones*, 133 F. Supp. 3d 364, 367 n.2 (D.N.H. 2015). Both regulatory actions—Final Rules and informal letters—have been challenged in federal courts. *E.g., Akins v. United States*, 312 F. App'x 197 (11th Cir. 2009) (per curiam) (affirming Final Rule); *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598 (1st Cir. 2016) (affirming classification letter).

B.

As occurred in the 1930s and then again in the 1960s, a well-publicized shooting provided the impetus for further review of federal restrictions on firearms. On October 1, 2017, a gunman in Las Vegas, Nevada, fired over one thousand rounds of ammunition into a crowd gathered for a concert. Fifty-eight people died and several hundred were wounded by the gunfire. The gunman reportedly employed bump-stock devices on several of his weapons. Following this tragic event, members of Congress, a number of non-governmental organizations, and eventually the President of the United States urged AFT to re-examine its prior considerations of bump stocks.

On December 26, 2017, the Department of Justice published an advanced notice of proposed rulemaking concerning bump-stock devices. On March 29, 2018, the Department published a notice of proposed rulemaking. The Department received over 185,000

comments, with the comments supporting the proposed rules exceeding those opposing the proposed rules at about a two-to-one ratio.

To appreciate how the new interpretation of the definition of machine gun implicates bump-stock devices, one must understand how the device works. The stock of a rifle is the portion of the weapon behind the trigger and firing mechanism and extends rearward towards the shooter. The forward part of the stock just behind the trigger provides a grip for the shooting hand. The rear end of the stock rests against the shooter's shoulder. A bump stock replaces the standard stock on a rifle. Bump stocks include an extension ledge or finger rest on which the shooter places his or her trigger finger where it is stabilized. 83 Fed. Reg. at 66516. The shooter then exerts a constant forward pressure on the barrel of the rifle using the non-trigger hand. *Id.* As the rifle is pushed forward, the shooter also pulls the trigger, initiating the firing sequence. *Id.* at 66532. The bump stock then harnesses the rearward recoil energy from the shot causing the weapon to slide back into shooter's shoulder separating the trigger finger resting on the ledge and the trigger itself. The constant forward pressure exerted by the non-trigger hand on the barrel then pushes the weapon forward "bumping" the weapon against the stationary trigger finger. The back-and-forth sequence allows a shooter to fire a semiautomatic rifle at rates similar to automatic rifles.

In the Final Rule, the ATF amended its regulations to clarify that bump-stock devices are machine guns, as that term is defined in the National Firearms Act and the Gun Control Act "because such devices allow a shooter of a semiautomatic firearm to initiate a continuous firing cycle with a single pull of the trigger." 83 Fed. Reg. at 66515. The Final Rule advances two definitions, both interpreting portions of the statutory definition of machine gun. First,

7

the Final Rule interprets the phrase "single function of the trigger" to mean "single pull of the trigger." *Id.* at 66518. Second, the Final Rule interprets the term "automatically" to mean "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger." *Id.* at 66519. Based on the two interpretations, the Final Rule clarifies that the term "machinegun" extends to devices like bump stocks that permit a semiautomatic weapon to shoot more than one shot with a single pull of the trigger "by harnessing the recoil energy" "so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter." *Id.*

### III.

### A.

To prevail on this motion for a preliminary injunction, Plaintiffs must demonstrate a likelihood of success on the merits. Accordingly, the Court considers what Plaintiffs must prove to prevail on the alleged violations of the APA.

The APA authorizes federal courts to review agency decisions and set aside those agency actions that are arbitrary and capricious or are in excess of the agency's statutory authority. 5 U.S.C. § 706(2)(A) and (C); *see Tennessee Hosp. Ass'n. v. Azur*, 908 F.3d 1029, 1037 (6th Cir. 2018). The Sixth Circuit has instructed that when an agency's decision depends on its construction of a federal statute, courts must determine what level of deference to afford that decision and then whether the decision exceeded the agency's statutory authority. *See Atrium Med. Ctr. v. United States Dept. of Health and Human Servs.*, 766 F.3d 560, 566 (6th Cir. 2014). If necessary, courts then evaluate the agency's reasoning to determine if the decision was arbitrary and capricious. *Id.*

The level of deference a court must afford to the agency's decision depends on whether "Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law[.]" *United States v. Mead*, 533 U.S. 218, 229 (2001); see *Atrium Med. Ctr.*, 766 F.3d at 566-67; *United States v. One TRW, Model M14, 7.62 Caliber Rifle*, 441 F.3d 416, 419-20 (6th Cir. 2006); accord *Sierra Club v. United States Army Corps of Eng'rs*, 909 F.3d 635, 643 (4th Cir. 2018). Following *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), agency decisions that meet a two-part test are afforded deference if the decision is "permissible," meaning that the decision is "within the bounds of reasonable interpretation." *Id.* at 842-43; see *Arangure v. Whitaker*, 911 F.3d 333, 338 (6th Cir. 2018); *Tennessee Hosp. Ass'n*, 908 F.3d at 1037-38. But, when Congress did not expect the agency's decision to carry the force of law, the decision is afforded deference only to the extent of its persuasiveness, *i.e.*, *Skidmore* deference. *Mead*, 533 U.S. at 228; see *Atrium Med. Ctr.*, 766 F.3d at 566-67.

Neither party attempts to navigate the hazardous waters of *Chevron/Skidmore*.[2] The two recent denials of motions for preliminary injunctions referenced above both afforded AFT deference, one relying on *Chevron* and the other relying on a *Skidmore*-like approach.[3] Here, both parties merely refer the Court to the statutory language of the APA. Defendants have explicitly stated that they do not contend that this Court should apply *Chevron*

---

[2] The Sixth Circuit recently described the status of *Chevron* as "already-questionable," *Arangure*, 911 F.3d at 338, and noted that "[m]any members of the Supreme Court have called *Chevron* into question, *id.* at n.3.

[3] In *Guedes*, Judge Friedrich discusses "the familiar *Chevron* framework," *slip op.* at 13-15, and then applied *Chevron*, *id.* at 18-25. In *Aposhian*, Judge Parris found that the Final Rule was "interpretive" 2019 WL 1227934, at *3, and concluded that the Final Rule reached the "best interpretation, *Id.* at *4 and *5.

deference to the Final Rule. (ECF No. 38 Notice of Supplement Authority PageID.302.) In their brief, Defendants simply defend ATF's interpretations as reasonable. Plaintiffs rely on the standard set forth in the APA and cite *Radio Association on Defending Airway Rights v. United States Department of Transportation*, 47 F.3d 794, 802 (6th Cir. 1995). *Radio Association* cites and relies on *Motor Vehicle Manufacturers Association of the United States v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29, 43 (1983). Problematic for Plaintiffs, *Motor Vehicle Manufacturers* was published a year before *Chevron*. While the parties might like to avoid *Chevron/Skidmore*, this Court cannot. This Court must apply the law as it is set forth by the Supreme Court and the Sixth Circuit, both of which have set forth guidelines for determining when *Chevron* or *Skidmore* applies to challenges brought under the APA.

Should any deference be afforded to the interpretation in the Final Rule, *Chevron* not *Skidmore* would apply. The statutory scheme suggests that Congress intended the ATF speak with the force of law when addressing ambiguity or filling a space in the relevant statutes. Federal courts must follow the *Chevron's* framework if "'Congress delegated authority to the agency generally to make rules carrying the force of law' *and* agency interpretation was 'promulgated in the exercise of that authority.'" *Atrium Med. Ctr.*, 766 F.3d at 566. Congress has delegated the authority to administer and enforce the statutes to the Attorney General, including the authority to prescribe necessary rules and regulations. 18 U.S.C. § 926(a)26 U.S.C. § 7801(A)(2)(A); *Akins*, 312 F. App'x at 198; *Freedom Ordnance Mfg., Inc.*, No. 3:16-cv-243, 2018 WL 7142127, at *5 n.6 (S.D. Ind. Mar. 27, 2018). The Attorney General then delegated the authority to ATF. 28 C.F.R. §0.130(a).

Using the formal rulemaking process, ATF reviewed the statute and promulgated both new interpretations and new regulations. The use of formal rulemaking procedures further suggests the Court should apply the *Chevron* analysis. *See Mead*, 533 U.S. at 229-30. And, although not determinative, ATF interpreted the NFA and GCA as containing a congressional delegation of authority. 83 Fed. Reg. at 66527.

When applying *Chevron*, courts perform a two-step test. *Arangure*, 911 F.3d at 337 (citing *City of Arlington v. F.C.C.*, 569 U.S. 290, 296 (2013)). First, the court must determine whether "Congress has directly spoken to the precise question at hand." *Chevron*, 467 U.S. at 842. Second, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. As part of the second step, courts consider whether the agency's rule is arbitrary or capricious or contrary to the statute. *Mayo Found. for Med. Educ. and Research v. United States*, 562 U.S. 44, 53 (2011).

For the first step, the Court determines any ambiguity in the statute by applying the ordinary tools of statutory construction. *Arangure*, 911 F.3d at 337. A statute is ambiguous when "to give th[e] phrase meaning requires a specific factual scenario that can give rise to two or more different meanings of the phrase." *All. for Cmty. Media v. F.C.C.*, 529 F.3d 763, 777 (6th Cir. 2008) (quoting *Beck v. City of Cleveland, Ohio*, 390 F.3d 912, 920 (6th Cir. 2004)). The statutory language must be viewed in context, not in isolation. *Id.* Although Congress defined the term "machinegun," it did not further define words or phrases used in that that definition. More specifically, Congress did not further define either the word "automatically" or the phrase "single function of the trigger." But, the lack of a definition does

not necessarily mean that Congress was silent on the specific issue. *Arangure*, 911 F.3d at 337 n.2. And, the lack of a definition does not require the conclusion that the statute is ambiguous. *Id.* at 338.

The Court concludes that Congress has not directly addressed the precise question at issue. Congress has not indicated whether bump stocks are included in the statutory definition of machine gun. *See e.g., Mayo Found.*, 562 U.S. at 52 ("The statute does not define the term "student," and does not otherwise attend to the precise question whether medical residents are subject to FICA.").

B.

When applied to bump stocks, the precise question at hand, the statutory definition of machine gun is ambiguous with respect to the word "automatically." When bump stocks are considered, the phrase "shoots . . . automatically more than one shot, without manual reloading, by a single function of the trigger," has more than one possible meaning. In the statute, "automatically" functions as an adverb modifying the verb "shoots." Relying on definitions from the 1930s, the ATF, 83 Fed. Reg. at 66519, and Defendants interpret the word to mean "the result of a self-acting or self-regulating mechanism." Citing contemporary definitions, Plaintiffs contend the term automatically means the device works "by itself with little or no direct human control."

Fairly summarized, the parties' dispute is whether the forward pressure exerted by the shooter using the non-trigger hand requires the conclusion that a bump stock does not shoot automatically. The statutory definition of machine gun does not answer this specific question. Dictionaries contemporary with the enactment of the NFA do not conclusively

resolve the issue. The statute is ambiguous as to whether the word "automatically" precludes any and all application of non-trigger, manual forces in order for multiple shots to occur. Read in context, a weapon is a machine gun when more than one shot occurs without manual reloading. Putting forward pressure on the barrel with the non-trigger hand is not manual reloading. Judge Friedrich observed, many "automatic" devices require some degree of manual input. *Guedes, slip op.* at 22. And, as Judge Parrish noted, machine guns which indisputably shoot automatically often require physical manipulation by the shooter, including constant rearward pressure on the trigger. *Aposhian*, 2019 WL 1227934, at *5. Accordingly, the Court concludes, with respect to the word "automatically," the statutory definition of machine gun is ambiguous.

AFT's interpretation of the word "automatically" is a permissible interpretation. The interpretation is consistent with judicial interpretations of the statute. *See United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009). And, Plaintiffs have not established that ATF's interpretation exceeds the agency's statutory authority. Accordingly, ATF's interpretation is entitled to *Chevron* deference.

C.

When applied to bump stocks, the statutory definition of machine gun is ambiguous with respect to the phrase "single function of the trigger." Within the statutory context, the phrase can have more than one meaning. Defendants and ATF define "single function of the trigger" as "single pull of the trigger." Their interpretation considers the external impetus for the mechanical process. Plaintiffs define the phrase as the mechanical process which causes each shot to occur. The statute does not make clear whether function refers to the

trigger as a mechanical device or whether function refers to the impetus for action that ensues. Both interpretations are reasonable under the statute. And, dictionaries from the 1930s provide no helpful guidance. *See Guedes*, slip op. at 19-20.

Courts interpreting the statute reinforce the conclusion that the disputed phrase is ambiguous. In a footnote in *Staples v. United States*, 511 U.S. 600, 602 n.2 (1994), the Supreme Court described automatic weapons as a weapon that "fires repeatedly with a single pull of the trigger." In *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002), the Seventh Circuit rejected, as "puerile," the defendant's argument that his minigun did not have a trigger, another term not defined in the statute. The court joined other circuits "in holding that a trigger is a mechanism used to initiate a firing sequence." *Id.* (collecting cases). The two interpretations are not mutually exclusive. ATF's interpretation finds support in *Staples* while Plaintiffs' interpretation finds support in *Fleischli*. And, in *Fleischli*, the court noted that dictionary definitions of "trigger" include both the mechanism itself and the act or event that serves as impetus for the ensuing action. *Id.* at 656.

ATF's interpretation of the phrase "single function of the trigger" is a permissible interpretation. It is consistent with judicial opinions interpreting the statute. Plaintiffs have not established that ATF exceeded its authority. ATF has been interpreting the disputed phrase in a similar manner at least since 2006. *See* ATF Rul. 2006-2; *Akins*, 312 F. App'x at 200.

IV.

Because this Court is bound to follow *Chevron*, and because this Court has concluded that the interpretations in the Final Rule must be afforded deference, the Court considers

Plaintiffs' arguments that the interpretations are, nevertheless, arbitrary and capricious.[4] The Court finds ATF's interpretations are not arbitrary and capricious.

A.

Plaintiffs argue that rubber bands and belt loops can be used to accomplish the same bump-fire sequence as bump stocks.

ATF's interpretations are not arbitrary and capricious because rubber bands and belt loops could be used to increase the rate of fire in a semiautomatic weapon. ATF specifically addressed this argument in the Final Rule. 83 Fed. Reg. at 66532-33. Rubber bands and belt loops are not parts or devices "designed and intended" as parts for a firearm. And, as ATF points out, rubber bands and belt loops do not harness the recoil energy when a shot is fired. The final phrase in the definition of machine gun does include the words "combination of parts from which a machinegun can be assembled." 28 U.S.C. § 5845(b). Plaintiffs' fear is not well-founded. AFT's interpretations of the statute—the definitions of "automatically" and "single function the trigger"—which extends to devices specially designed and marketed for the purpose of increasing the rate of fire of a semiautomatic weapon will not pose a danger of prosecution to individuals who own a semiautomatic weapon and also happen to own pants or elastic office supplies. "[N]othing is better settled than that statutes

---

[4] For one of its arguments, Plaintiffs contend the new interpretation is arbitrary and capricious because it will allow semiautomatic weapons to be classified as machine guns. In this section, II(E), Plaintiffs pose at least eight rhetorical questions. Many of the questions assume that one person owns both a semiautomatic weapon and a bump stock. But, after March 26, no one is supposed to own a bump stock. Therefore, the premise of those questions is flawed. Plaintiffs also asks whether future administrations might ban semiautomatic weapons. Plaintiffs have advanced a "slippery slope," a logical fallacy that avoids the question presented and shifts to a more extreme hypothetical.

should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid unjust or an absurd conclusion[.]" *In re Chapman*, 166 U.S. 677, 680 (1897).

B.

Plaintiffs assert the new interpretation is arbitrary and capricious because ATF previously concluded that bump stocks were not machine guns.

The United States Supreme Court has rejected a rule that changes in statutory interpretations by agencies are necessarily arbitrary and capricious. *See Motor Vehicle Mfgs. Ass'n*, 463 U.S. at 42. Rules promulgated by agencies do not "last forever" and agencies have "ample latitude" to establish rules in response to changing times and circumstances. *Id.* (citation omitted). The standard for reviewing an agency's rule or interpretation of a statute does not change just because the agency reversed course and altered its prior interpretation. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-15 (2009). When an agency changes an earlier rule it must "provide [a] reasoned explanation for its action" and it must "display [an] awareness that it *is* changing positions." *Id.* at 515. The agency must always set forth good reasons for a new rule. *Id.* But, when the agency departs from a prior rule, it need not explain why the "reasons for the new policy are *better* than the reasons for the old one." *Id.* ATF has met its burden. ATF acknowledged how it previously treated bump stocks. 83 Fed. Reg. at 66517. Among other reasons, ATF concluded that its prior considerations "did not provide substantial or consistent legal analysis regarding the meaning of the term 'automatically[.]'" *Id.* at 66518. ATF then set forth sufficient reasons for its new interpretations.

V.

The Court concludes that Plaintiffs have not demonstrated a likelihood of success on the merits of their APA challenges to ATF's Final Rule. With this determination, Plaintiffs' motion for a preliminary injunction will be denied. Defendants concede that Plaintiffs will suffer irreparable harm without an injunction. (Pl. Resp. at 27 n.16 PageID.279.) The two remaining factors do not weigh heavily in favor of Plaintiffs, if at all. Congress restricts access to machine guns because of the threat the weapons pose to public safety.[5] Restrictions on bump stocks advance the same interest. All of the public is at risk, including the smaller number of bump stock owners.

Most of Plaintiffs' arguments on the final two elements are merely extensions of the first and second elements of a preliminary injunction. Plaintiffs identify the adverse impact on the liberty and property interests of bump-stock owners as supporting the public's interest in a preliminary injunction. The property interest identified overlaps completely with the second element for a preliminary injunction, irreparable harm. Plaintiffs contend that the Final Rule jeopardizes a bump-stock owner's right to bear arms. That assertion overlaps with the merits element; Plaintiffs' assume bump stocks are protected by the right to bear arms. At least one circuit court, post *Heller*, has found that machine guns are not protected bearable arms under the Second Amendment. *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016). Plaintiffs also assert that the public has an interest in the proper exercise of legislative

---

[5] ATF did not "waive" this justification in the Final Rule. ATF made several references to public safety as a justification for the interpretation in the portion of the Final Rule addressing the public's comments. *See* 83 Fed. Reg. at 66520 and 66529.

power and that the Final Rule exceeds ATF's statutory authority. Again, that interest overlaps entirely with the merits of Plaintiffs' claim.

Accordingly, the balance of the four factors weighs against Plaintiffs and the Court declines to issue a preliminary injunction.

## ORDER

For the reasons provided in the accompanying Opinion, Plaintiffs' motion for a preliminary injunction (ECF No. 9) is **DENIED.**

**IT IS SO ORDERED.**

Date: March 21, 2019                                /s/ Paul L. Maloney
                                                                    Paul L. Maloney
                                                                    United States District Judge