UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUN OWNERS OF AMERICA, INC.,
GUN OWNERS FOUNDATION,
VIRGINIA CITIZENS DEFENSE LEAGUE,
MATT WATKINS, TIM HARMSEN, and
RACHEL MALONE,

        Plaintiffs,

v.

MERRICK B. GARLAND, *et al.*,

        Defendants.

Case No. 1:18-cv-01429-PLM-RSK

Hon. Paul L. Maloney

___

**MEMORANDUM IN SUPPORT OF PLAINTIFFS GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, VIRGINIA CITIZENS DEFENSE LEAGUE, MATT WATKINS, TIM HARMSEN, AND RACHEL MALONE'S MOTION FOR ATTORNEYS' FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT**

As prevailing parties in this litigation, Plaintiffs move for attorneys' fees and expenses under both Rule 54(d) of the Federal Rules of Civil Procedure and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  Plaintiffs have prevailed in this case because this Court entered judgment in their favor, declaring that "the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) rule titled Bump-Stock Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018) (Rule) was issued in excess of ATF's statutory authority and is therefore unlawful."  Nov. 1, 2024 Order, ECF No. 103. Notably, this Court observed that "Defendants do not oppose Plaintiffs' request for declaratory relief."  *Id.*

The history of this litigation and this Court's ruling demonstrates that the government's position was not substantially justified.  First, ATF bowed to a political edict with no basis in law,

1

reversing at least ten prior determinations that a bump stock was not a machine gun. Second, to reach that predetermined political result, Defendants were required to misconstrue an unambiguous statute and misconstrue the facts about how bump stocks operate. Third, Defendants did not oppose entry of declaratory relief against the Rule following *Cargill*. Moreover, no special circumstances make a fee award unjust. This motion is timely, and the rates and hours Plaintiffs request are reasonable. Accordingly, for the reasons explained in this Memorandum, Plaintiffs seek an award of $ $431,272.50 in attorneys' fees and $34,851.53 in litigation costs and expenses (including preparation of this motion) under Fed. R. Civ. P. 54 and EAJA, for a total of **$466,124.03**.[1]

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed this action for declaratory and injunctive relief on December 26, 2018, pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331. This Court had authority to grant the remedy Plaintiffs sought under 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. § 706. The suit was brought against Matthew Whitaker, named in his then-official capacity as Acting Attorney General, and Thomas E. Brandon, in his then-official capacity as Acting Director, Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter collectively "Defendants"). Plaintiffs' central claim against Defendants was that the Rule was issued in excess of ATF's statutory authority and therefore was unlawful. Plaintiffs sought declaratory, injunctive, and other relief.

This Court held a hearing on Plaintiffs' motion for preliminary injunction on March 6, 2019. On March 21, 2019, the Court denied Plaintiffs' motion for preliminary injunction. Plaintiffs filed an appeal. The Sixth Circuit initially reversed. *Gun Owners of Am., Inc. v. Garland*,

---

[1] To the extent Plaintiffs seek leave to file and are granted a reply to Defendants' response, Plaintiffs will file supplemental materials. *See Doucette v. Comm'r of Soc. Sec.*, 13 F.4th 484, 489 (6th Cir. 2021).

992 F.3d 446 (6th Cir. 2021). In June 2021, the Sixth Circuit granted *en banc* review, vacating the panel's opinion. *Gun Owners of Am., Inc. v. Garland*, 2 F.4th 576 (6th Cir. 2021). After rehearing, the court evenly split, resulting in the affirmation of this Court's decision. *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890 (6th Cir. 2021). Thereafter, Plaintiffs petitioned the U.S. Supreme Court for a writ of certiorari, which was denied in October 2022. *Gun Owners of Am., Inc. v. Garland*, 143 S. Ct. 83 (2022).

Following Plaintiffs' appeal of this Court's denial of preliminary relief, this case was stayed pending further proceedings in *Garland v. Cargill*, No. 22-976. *See* Nov. 9, 2023 Order, ECF No. 87 (continuing stay); *see also Garland v. Cargill*, 144 S. Ct. 374 (2023) (granting petition for writ of certiorari to the Fifth Circuit). The Supreme Court issued its opinion in *Cargill* on June 14, 2024. *See Garland v. Cargill*, 602 U.S. 406 (2024) ("*Cargill*").

In *Cargill*, the Supreme Court held that the Rule exceeded ATF's statutory authority. The Supreme Court held that a semiautomatic rifle equipped with a bump stock is not a "machinegun" as defined by Section 5845(b) because: (1) it cannot fire more than one shot "by a single function of the trigger" and, (2) even if it could, it would not do so "automatically." *Cargill* at 423, 427. Soon after deciding *Cargill*, the Supreme Court also denied the government's petition for a writ of certiorari in *Hardin v. ATF*, No. 20-6380 (6th Cir. Apr. 25, 2023), ECF No. 43 (holding Section 5845(b)'s definition of a "machinegun" does not encompass bump stock devices). *See Garland v. Hardin*, 144 S. Ct. 2680 (2024).

On June 28, 2024, the Supreme Court decided *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), and *Relentless, Inc. v. Dep't of Com.*, No. 22-1219, overruling the principle of *Chevron* deference established in *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). These decisions bear on the reasoning of this Court's Mar. 21, 2019 Opinion and

3

Order, ECF No. 48, PageID.465, which concluded that "ATF's interpretation" with respect to bump stocks was "a permissible interpretation" and therefore "entitled to *Chevron* deference."

On November 1, 2024, this Court entered its Order Resolving Competing Proposals, holding that Plaintiffs' requests for injunctive relief are moot following *Cargill* and *Hardin*, but granting Plaintiffs' request for declaratory relief. *See* Nov. 1, 2024 Order, ECF No. 102. This Court then entered a Final Order declaring that the Rule "was issued in excess of ATF's statutory authority and is therefore unlawful." Nov. 1, 2024 Order, ECF No. 103. In so doing, this Court observed that "Defendants do not oppose Plaintiffs' request for declaratory relief." *Id.*

## ARGUMENT

**I.    PLAINTIFFS ARE ELIGIBLE AND ENTITLED TO AN AWARD OF FEES AND EXPENSES.**

Because Plaintiffs challenged the Rule and successfully obtained declaratory relief holding the Rule contrary to statute, Plaintiffs can recover attorneys' fees and expenses under EAJA. As the Ninth Circuit observed in summarizing several Supreme Court cases:

> The policy behind the EAJA "is to encourage litigants to vindicate their rights where any level of the adjudicating agency has made some error in law or fact and has thereby forced the litigant to seek relief from a federal court." … "[W]e have consistently held that regardless of the government's conduct in the federal court proceedings, unreasonable agency action at any level entitles the litigant to EAJA fees." *Id.* [*Ibrahim v. DHS*, 912 F.3d 1147, 1166-67 (9th Cir. 2019) (citations omitted).]

The Sixth Circuit has explained that the "EAJA … provides for an award of attorney fees to a party prevailing against the United States in a civil action when the position taken by the Government is not substantially justified and no special circumstances exist warranting a denial of fees." *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 445 (6th Cir. 2009). Plaintiffs are eligible to receive fees under EAJA and have filed a timely motion. Indeed, Plaintiffs are prevailing parties, Defendants' position was not substantially justified, no special circumstances make an award unjust, and

4

Plaintiffs meet the appropriate net-worth requirements. Thus, EAJA entitles Plaintiffs to an award of attorneys' fees and expenses.

EAJA, 28 U.S.C. §§ 2412(d)(1)(A) & (B), directs that a fee application must include:

- A showing that the prevailing party is a prevailing party. 28 U.S.C. § 2412(d)(1)(A).

- An allegation that the pre-litigation and litigation position of the government was not substantially justified. 28 U.S.C. §§ 2412(d)(1)(A) & (2)(D).

- An allegation that there are no special circumstances that would make an award unjust. 28 U.S.C. § 2412(d)(3).

- A showing that the petitioning party has met the appropriate net-worth requirements. 28 U.S.C. § 2412(d)(2)(B).

Plaintiffs discuss each requirement in turn.

### A. Plaintiffs' Motion Is Timely.

EAJA requires submission of fee applications "within thirty days of the final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). The Supreme Court has interpreted "final judgment" under EAJA to mean "a judgment rendered by a court that terminates the civil action for which EAJA fees may be received. The 30-day EAJA clock begins to run after the time to appeal that 'final judgment' has expired." *Melokonyan v. Sullivan*, 501 U.S. 89, 96 (1991). Here, this Court entered its final judgment in this action on November 1, 2024. *See* Orders, ECF Nos. 102 & 103. The government did not oppose entry of declaratory relief and therefore an appeal would not be well-taken.[2] Plaintiffs' Motion, being filed within 30 days of this Court's November 1, 2024 Orders, is thus timely.

### B. Plaintiffs Are Eligible for EAJA Recovery.

---

[2] Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(B), Defendants otherwise would be allowed 60 days from that date within which to file any notice of appeal.

5

EAJA provides attorneys' fees and costs to prevailing individuals with a net worth of not more than $2 million and to prevailing businesses, organizations, associations, and local government units with a net worth of not more than $7 million and no more than 500 employees. All Plaintiffs meet these criteria and, therefore, each is eligible to recover fees and costs under EAJA. *See* Plaintiffs' Declarations, Exhibits 1-5. Therefore, Plaintiffs are "part[ies]" within the definition of 28 U.S.C. § 2412(d)(2)(B).

*1.   Plaintiffs Are Prevailing Parties.*

Under EAJA, to be a prevailing party, "a plaintiff must have 'been awarded some relief by the court.'" *Tenn. State Conf. of NAACP v. Hargett*, 53 F. 4th 406, 410 (6th Cir. 2022). A party prevails "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Perket v. Sec'y of HHS*, 905 F.2d 129, 132 (6th Cir. 1990). Here, Plaintiffs easily meet this threshold: they have prevailed on the central claim in their case and secured this Court's Order declaring that the Defendants' Final Rule "was issued in excess of ATF's statutory authority and is therefore unlawful." Nov. 1, 2024 Order, ECF No. 103. Indeed, Plaintiffs sought declaratory relief from the Rule from the outset. *See* Compl. Prayer for Relief, ECF No. 1, PageID.27. Thus, Plaintiffs are prevailing parties in this case.

*2.   Defendants' Position Was Not Substantially Justified, and There Are No Special Circumstances Making an Award Unjust.*

The award of fees and expenses under EAJA to a prevailing party is mandatory "unless the court finds that the position of the Defendant was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Neither exception applies in this case. Here, Plaintiffs are only required to allege that ATF's position was "not substantially justified." *Scarborough v. Principi*, 541 U.S. 401, 414-15 (2004); *see also* 28 U.S.C. § 2412(d)(1)(B) (motion must "allege that the position of the United States was not substantially

6

justified"). The government then bears the burden of demonstrating that its position *was* substantially justified. *Cinciarelli v. Reagan*, 729 F.2d 801, 806 (D.C. Cir. 1984). To meet that burden, the government must show that its position was "'justified in substance or in the main' – 'that is, justified to a degree that could satisfy a reasonable person.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Thus, the government's position must be something "more than merely undeserving of sanctions for frivolousness....'" *Id.* at 566. The government is not "substantially justified [unless] it has a 'reasonable basis both in law and fact.'" *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). What "matters most" is the "actual merits" of the government's position. *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 563 (6th Cir. 2021). Defendants cannot make a showing of substantial justification here, as they were not justified in either law or fact.[3]

First, as the Court in *Cargill* noted that ATF's position in this case marked a dramatic shift when compared to the agency's earlier factual findings and legal conclusions: "On more than 10 separate occasions over several administrations, ATF consistently … took the position that semiautomatic rifles equipped with bump stocks were not machineguns under the statute...." *Cargill* at 412. Yet against this backdrop of consistent agency decisions and determinations, Defendants adopted the opposite conclusion at the President's behest. Indeed, such a departure was motivated by nothing other than "tremendous political pressure to outlaw bump stocks nationwide," *id.*, when, after a Las Vegas shooting, the President demanded ATF reject its prior consistent determinations and outlaw bump stocks. This change was, as the Supreme Court noted, generated by "political pressure," not any change to bump stocks themselves or their mechanics.

---

[3] Even then-Senator Dianne Feinstein acknowledged that ATF lacked authority under the law to ban bump stocks, stating that "ATF has consistently stated that bump stocks could not be banned through regulation because they do not fall under the legal definition of a machine gun. … [T]he regulation hinges on a dubious analysis...." *See* https://www.judiciary.senate.gov/press/dem/releases/feinstein-statement-on-regulation-to-ban-bump-stocks.

7

*Id.* Under EAJA, "[w]hether or not the position of the United States was substantially justified shall be determined on the basis of the record…." 28 U.S.C. § 2412(d)(1)(B). Where Defendants take a forced political position that is belied by their own data and evidence,[4] they cannot credibly assert that their position was reasonable.

Second, the Supreme Court held that Defendants took a position that is contrary to the plain meaning of an unambiguous statute. Holding that Defendants had "[a]bandon[ed] the text," the Court observed:

> Section 5845(b) asks whether a weapon "shoots … automatically more than one shot … by a single function of the trigger." … If something more than a "single function of the trigger" is required to fire multiple shots, the weapon does not satisfy the statutory definition. As Judge Henderson put it, the "statutory definition of 'machinegun' does not include a firearm that shoots more than one round 'automatically' by a single pull of the trigger **AND THEN SOME**." [*Cargill* at 424.]

An agency's position that conflicts with the meaning of the relevant statute cannot qualify as substantially justified. *See Air Transp. Ass'n of Can. v. FAA*, 156 F.3d 1329, 1332-33 (D.C. Cir 1998). Here, ATF "[a]bandon[ed] the text" and performed an "about-face" based on "political pressure," adopting a Rule that the Supreme Court found plainly conflicted with both requirements of the statute. *Cargill* at 427, 428, 412. And when the "government interprets a statute in a manner that is contrary to its plain language and unsupported by its legislative history, it will prove difficult to establish substantial justification." *Patrick v. Shinseki*, 668 F.3d 1325, 1330-31 (Fed. Cir. 2011); *cf. Cargill* at 428 (bump-stock rule supported by neither).

---

[4] *See MCR Oil Tools, L.L.C. v. DOT*, 2024 U.S. App. LEXIS 14297, at *12 (5th Cir. June 12, 2024) ("The agency [cannot] … ignore 'data it did not want to consider.' … That is especially so where, as here, the agency has ignored *directly contradictory* evidence that thoroughly forecloses its chosen position.").

8

Third, ATF was wrong not only on the law but also on the facts. Although Defendants claimed in this case that a bump stock "harnesses" recoil energy (Final Rule at 66553-54), a factual point Plaintiffs disputed (Compl. ¶113; ECF No. 10 at PageID.182), the Supreme Court explained correctly that the "shooter … uses the firearm's recoil to help rapidly manipulate the trigger." *Cargill* at 411. ATF also argued here that bump stocks require mere "constant forward pressure" on the rifle (Final Rule at 66532), a point Plaintiffs similarly disputed (ECF No. 10 at PageID.177 & n.11). The Supreme Court again set the record straight, explaining that "[a] shooter must … maintain just the right amount of forward pressure on the rifle's front grip...." *Cargill* at 424. In other words, Defendants' Rule did not even clear the starting gate in explaining the facts of how bump stocks operate.

For these reasons, Defendants' position was not substantially justified and there are no special circumstances[5] that would render an EAJA award unjust.

3.  *Plaintiffs Have Met the Appropriate Net-Worth Requirements.*

Plaintiffs' Declarations attest that each has met the net-worth requirements of 28 U.S.C. § 2412(d)(2)(B). *See* Exhibits 1-5.

**II. PLAINTIFFS' REQUEST IS REASONABLE.**

As further detailed below, the fees, costs, and expenses sought by Plaintiffs are reasonable.

**A. Attorneys' Fees.**

Plaintiffs seek an award of fees for legal services of Plaintiffs' counsel who have litigated this case on behalf of all Plaintiffs: Robert J. Olson, Kerry L. Morgan, William J. Olson, Herbert

---

[5] If anything, "special circumstances" weigh oppositely, as this case involves a federal agency egregiously ordering, contrary to law and fact, that American gun owners destroy hundreds of millions (if not billions) of dollars of their lawfully owned property, or else face criminal prosecution and imprisonment for merely exercising their enumerated right to "keep and bear arms."

9

W. Titus, Jeremiah L. Morgan, Stephen D. Stambouliȩh, and Rick D. Boyer. The accompanying declarations of counsel, and itemized statements of time, establish that these attorneys' time was necessarily, reasonably, and efficiently spent, and that the rates Plaintiffs' seek for that time are reasonable, less than or in line with prevailing market rates.

　　*1.　The Time Claimed by Plaintiffs' Counsel Is Reasonable.*

The hours claimed are reasonable. Courts routinely hold that "[t]he complexity of the action is relevant to determine 'where the particular attorney's representation lies along the spectrum of the market for legal services.'" *Doucette,* 13 F.4th at 492. This case has extended for almost six years, involved extensive briefing in the trial court, court of appeals (including en banc briefing and oral argument), and a petition for a writ of certiorari in the Supreme Court. This required counsel to review and address many highly technical and nuanced legal arguments advanced by Defendants. The reasonableness of the hours claimed is further supported by the results achieved. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

In addition, as evidenced by counsels' declarations, time spent on a number of tasks has been discounted to minimize time that could be construed as redundant or inefficient and has been eliminated in the exercise of billing judgment. In sum, the hours claimed here were reasonable and necessary to the successful outcome of this litigation.

　　*2.　Time Spent on Fee Recovery Is Compensable.*

It is well-established that EAJA authorizes an award of attorneys' fees for time spent preparing a fee application. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 162 (1990). The records submitted include time reasonably expended through the date of filing this Motion for Attorneys' Fees.

　　*3.　Plaintiffs Are Entitled to Fees Commensurate with Prevailing Market Rates.*

EAJA "provides that hourly rates shall be determined 'based upon prevailing market rates' … but also imposes a presumptive cap of $125 per hour." *Doucette*, 13 F.4th at 488. However, "[a] court can exceed the cap if it 'determines that an increase in the cost of living or a special factor … justifies a higher fee.' *Id.* A fee applicant 'bear[s] the burden of producing appropriate evidence to support [a] requested increase.'" *Id.* Plaintiffs request an award at "prevailing market rates" in excess of the presumptive cap.

In addition to cost-of-living adjustments, EAJA allows for special factors "such as the limited availability of qualified attorneys for the proceedings involved" to adjust the statutory cap. 28 U.S.C. § 2412(d)(2)(A). Without statutorily enumerated factors, such considerations have been left to the courts. For example, the Eleventh Circuit has held that, in the immigration-law context, "a special skill authorizes an upward adjustment of hourly rates" because it "is narrow legal specialty which might entitle them to an adjustment...." *Jean v. Nelson*, 863 F.2d 759, 774 (11th Cir. 1988).

The attorneys who worked on this matter have extensive experience in briefing and arguing Second Amendment and firearms cases in federal court. There are few attorneys throughout the country whose practice includes such litigation, especially involving litigation against the federal government and ATF.

Mr. Olson practices almost exclusively Second Amendment litigation, and is routinely approached by clients throughout the Second Amendment community for assistance in firearms-related litigation matters, including complex statutory and constitutional challenges to state and federal firearms laws and regulations, as well as representation of individuals on firearms-related matters, both civil and criminal. *See* Exhibit 9 (listing representative cases). Because Mr. Olson's firm routinely litigates against ATF in particular, clients nationwide have sought their counsel,

including numerous gun-rights advocacy groups, States, industry members, and individuals. *See id.*

Other attorneys from William J. Olson, P.C. assisted in this case as well, and are reflected in the Declaration of Robert Olson and the associated time entries attached as Exhibit 9. They are: William J. Olson, Herbert W. Titus, Jeremiah L. Morgan, Stephen D. Stamboulieh, Rick D. Boyer. *Id.* Plaintiffs seek the standard hourly rates charged by William J. Olson, P.C., as explained in the declaration of Robert Olson. Depending on the year of this litigation, those rates for partners ranged between $425 to $525, for senior associates and of counsel between $325 and $425, and for associates $200.[6]

Local counsel Kerry L. Morgan, admitted to practice in 1981, has similarly extensive experience in Michigan courts, including experience litigating firearm cases, as described in his declaration. Exhibit 10. Plaintiffs seek an hourly rate of $300 for Mr. Morgan's time in this case, which represents a standard rate charged by Mr. Morgan to clients during the years of this litigation. Plaintiffs have also discounted both the hours and rate sought for non-attorney specialized legal assistants who assisted Mr. Morgan in the case. *Id.*

This action involves a federal statutory and regulatory scheme under both the National Firearms Act of 1934 and the Gun Control Act of 1968. Notwithstanding ATF's attempt to turn hundreds of thousands of lawful bump stock gun owners into overnight felons with the stroke of a pen, there were only approximately six other cases filed challenging the Rule, demonstrating the lack of qualified counsel to bring these types of cases.

---

[6] While "delayed payment of attorneys' fees" can justify seeking reimbursement for all work performed based on current rates (*see Young v. Sarles*, 197 F. Supp. 3d 38, 50-52 (D.D.C. 2016), Plaintiffs do not do so here.

Congress has permitted upward deviations from EAJA's statutory rate cap in instances where special factors reasonably should be taken into consideration. 28 U.S.C. § 2412(d)(2)(A). Factors such as "a special expertise" in an area of the law that "is a narrow legal specialty" have been recognized. *Jean*, 863 F.2d at 774. Based on the highly technical and specialized nature of this litigation, and the relatively small number of attorneys who litigate such matters, Plaintiffs request that this Court recognize a special-expertise factor here.

In support of a requested deviation in rates due to special factors, Plaintiffs rely on the declarations of Randall A. Pentiuk, Esq., Dean G. Greenblatt, Esq., and John I. Harris, III, Esq. Exhibits 6-8. Plaintiffs submit that the Pentiuk and Greenblatt declarations demonstrate that the fee rates sought in this Motion are reasonable for this district. Plaintiffs submit that the Harris declaration establishes that Plaintiffs' counsel are well-qualified to engage in the sort of complex, highly technical litigation involved here, and that the number of such qualified counsel across the country is small. These factors make an upward deviation of fees appropriate in this case.

In addition to these declarations, Plaintiffs rely on the State Bar of Michigan's 2023 ECONOMICS OF LAW IN MICHIGAN Survey (Exhibit 11) as an appropriate guide to establish a reasonable hourly rate commensurate with their specialization and experience. This Survey shows that a prevailing market rate in this district ranges from approximately $350 to $470. *See* Exhibit 11, at 5.

Plaintiffs' total combined attorneys' fee request was calculated by (1) adding the total hours of work by an attorney or legal assistant during a calendar year, and (2) multiplying it by the hourly rate being sought. *See* Exhibit 13 (summary chart). The total amount of fees being sought is $72,367.50 for Kerry Morgan's firm, and $358,905.00 for William J. Olson, P.C., together totaling $431,272.50. *Id*.

Alternatively, if this Court does not award prevailing market rates, then Plaintiffs should be awarded a "cost of living adjustment" above the statutory EAJA rates. Cost-of-living adjustments reflect "congressional awareness that, with inflation, the fee limiting provision could defeat the purpose of the statute." *Action on Smoking*, 724 F.2d at 217. Accordingly, EAJA's statutory cap for fees is routinely adjusted to account for increases in the cost of living. The hourly cap is then adjusted by applying the increase in the Consumer Price Index ("CPI") between the date at which the cap was established (March 1996), and each year in which Plaintiffs' counsel provided the relevant services. *See, e.g., Masonry Masters, Inc. v. Nelson*, 105 F.3d 708, 711-12 (D.C. Cir. 1997).

Applying this formula, the applicable EAJA caps for the relevant years, as adjusted for inflation, are as follows: $201.60 for 2018, $205.25 for 2019, $207.78 for 2020, $217.54 for 2021, $234.95 for 2022, $244.62 for 2023, and $244.62 for 2024. *See* Exhibit 12.

### B. Costs and Expenses.

EAJA authorizes courts to award to prevailing parties their "costs," 28 U.S.C. § 2412(a)(1), and "other expenses." *Id.* § 2412(d)(2)(A); *see also Nat'l Ass'n of Mfrs. v. U.S. Dep't of Labor*, 962 F. Supp. 191, 199 (D.D.C. 1997). "Items routinely billed to a client are recoverable under the EAJA." *Id. See, e.g.*, *Mass. Fair Share v. L. Enf't Assistance Admin.*, 776 F.2d 1066, 1069-70 (D.C. Cir. 1985) (duplication expenses); *Hirschey v. FERC*, 777 F.2d 1, 6 (D.C. Cir. 1985) (computer research fees, filing fees); *Nat'l Ass'n of Mfrs.*, 962 F. Supp. at 199.

Plaintiffs incurred costs and expenses in the amount of $34,851.53, documented in attachments to the declarations of Morgan ($2,084.12) and Olson ($32,767.41). *See* Exhibits 9, 10. These include expert witness fees, filing fees, copying, travel, computerized legal research costs as well as transcription fees, and specialized Supreme Court practice counsel. All of these

14

costs and expenses are reasonable, ordinary, and were necessary to realize the results obtained in this case. Therefore, Plaintiffs seek a combined grand total of **$466,124.03** in fees and costs in this case.

### III.    CONCLUSION.

For the foregoing reasons, Plaintiffs request the Court to award Plaintiffs attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act and Fed. R. Civ. P. 54(d).

Respectfully submitted,
PENTIUK, COUVREUR & KOBILJAK, P.C.

By:    */s/Kerry L. Morgan*
Kerry L. Morgan (P32645)
2915 Biddle Avenue, Suite 200
Wyandotte, MI  48192
Main:    (734) 281-7100
Fax:     (734) 281-7102
Kmorgan@pck-law.com


WILLIAM J. OLSON, P.C.


By:    */s/Robert J. Olson*
Robert J. Olson
370 Maple Avenue West, Suite 4
Vienna, VA  22180
T:   (703) 356-5070
F:   (703) 356-5085
wjo@mindspring.com
*Attorneys for Plaintiffs*

Dated:  November 30, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2024, I e-filed the foregoing Motion of Plaintiffs Gun Owners of America, Inc., Gun Owners Foundation, Virginia Citizens Defense League, Matt Watkins, Tim Harmsen, and Rachel Malone's Motion for Attorneys' Fees and Costs Under the Equal Access to Justice Act and Memorandum in Support, via electronic means using this Court's e-filing and e-service system which will serve a copy upon all counsel of record.

/s/ *Kerry L. Morgan*
Kerry L. Morgan