UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUN OWNERS OF AMERICA, Inc.
*et al.*

Plaintiffs,

v.

MERRICK B. GARLAND,
*et al.*

Defendants.

Case No.  1:18-cv-01429
The Hon. Judge Maloney

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

BACKGROUND ..........................................................................................................................1

I.      Factual and Regulatory Background ................................................................................1

II.     Procedural Background......................................................................................................3

ARGUMENT.................................................................................................................................4

I.      Legal Standards .................................................................................................................4

II.     Plaintiffs Are Not Entitled to Fees and Costs Under EAJA Because ATF's Position Was Substantially Justified ......................................................................................7

        A.      As the Sixth Circuit Has Noted, Numerous Favorable Judicial Decisions Show that ATF's Position Was Substantially Justified. ........................................7

        B.      As the Sixth Circuit Has Recognized, ATF's Change in Position Over Time Does Not Undermine the Reasonableness of the Government's Position. ......................................................................................................8

        C.      The Supreme Court's Determination that the Statutory Language Is Unambiguous Has No Bearing on the Substantial Justification Analysis. .............9

III.    Plaintiffs Are Not Entitled to a Fee Enhancement .........................................................11

CONCLUSION............................................................................................................................13

## TABLE OF AUTHORITIES

**CASES**

*Akins v. United States*,
  312 F. App'x 197 (11th Cir. 2009) ......................................................................................... 8

*Anthony v. Sullivan*,
  982 F.2d 586 (D.C. Cir. 1993) ................................................................................................ 6

*Aposhian v. Barr*,
  958 F.3d 969 (10th Cir. 2020),
  *aff'd* 374 F. Supp. 3d 1145 (D. Utah 2019) ............................................................................ 7

*Ardestani v. INS*,
  502 U.S. 129 (1991) ............................................................................................................ 5, 9

*Cargill v. Barr*,
  502 F. Supp, 3d 1163 (W.D. Tex. 2020),
  *rev'd* 602 U.S. 406 (2024) ........................................................................................... 7, 8, 10

*Cargill v. Garland*,
  20 F.4th 1004 (5th Cir. 2021),
  *rev'd en banc*, 37 F.4th 1091 (5th Cir. 2022) ........................................................................ 7

*Chamber of Com. v. SEC*,
  115 F.4th 740 (6th Cir. 2024) ................................................................................................. 9

*Chynoweth v. Sullivan*,
  920 F.2d 648 (10th Cir. 1990) ........................................................................................ 11, 12

*Comm'r, INS v. Jean*,
  496 U.S. 154 (1990) ................................................................................................................ 6

*Estate of Cervin v. Comm'r*,
  200 F.3d 351 (5th Cir. 2000) ................................................................................................ 11

*F.J. Volmer Co. v. Magaw*,
  102 F.3d 591 (D.C. Cir. 1996) .............................................................................................. 12

*Forest Serv. Emps. v. U.S. Forest Serv.*,
  No. 5:08-CV-00091, 2010 WL 5159321 (W.D. Ky. Dec. 14, 2010) ............................... 11, 12

*Garland v. Cargill*,
  602 U.S. 406 (2024) ....................................................................................................... *passim*

*Gray v. Comm'r of Soc. Sec.*,
   23 Fed. Appx. 436 (6th Cir. 2001) .................................................................................. 6

*Griffith v. Comm'r of Soc. Sec.*,
   987 F.3d 556 (6th Cir. 2021) ........................................................................................ 7

*Guedes v. ATF*,
   45 F.4th 306 (D.C. Cir. 2022),
   *aff'g* 520 F. Supp. 3d 51 (D.D.C. 2021) ....................................................................... 7

*Gun Owners of Am., Inc. v. Garland*,
   143 S. Ct. 83 (2022) ..................................................................................................... 4

*Gun Owners of Am., Inc. v. Garland*,
   992 F.3d 446 (6th Cir. 2021) ..................................................................................... 3, 7

*Hardin v. ATF*,
   501 F. Supp. 3d 445 (W.D. Ky. 2020) .......................................................................... 7

*Hardin v. ATF*,
   65 F.4th 895 (6th Cir. 2023) ............................................................................... 7, 8, 10

*In re Sealed Case* 00-5116,
   254 F.3d 233 (D.C. Cir. 2001) .................................................................................... 12

*Loper Bright Enters. v. Raimondo*,
   144 S. Ct. 2244 (2024) ........................................................................................ 10, 11

*Mary v. Harris Found. v. FCC*,
   776 F.3d 21 .................................................................................................................. 9

*Nat'l Ass'n of Home Builders v. EPA*,
   682 F.3d 1032 (D.C. Cir. 2012) .................................................................................... 9

*Pierce v. Underwood*,
   487 U.S. 552 (1988) ......................................................................................... 5, 7, 9, 12

*Raines v. Shalala*,
   44 F.3d (7th Cir. 1995) .............................................................................................. 12

*Scarborough v. Principi*,
   541 U.S. 401 (2004) ..................................................................................................... 5

*SEC v. Price Waterhouse*,
   41 F.3d 805 (2d Cir. 1994) ........................................................................................ 5, 6

*Stockton v. Shalala*,
   36 F.3d 49 (8th Cir. 1994) ......................................................................................... 12

*U.S. Real Property Located at 2323 Charms Rd.*,
    946 F.2d 437 (6th Cir. 1991) ..................................................................................6

**STATUTES**

26 U.S.C. § 5845(b) ...............................................................................................1, 4

28 U.S.C. § 1920......................................................................................................6

28 U.S.C. § 2412............................................................................................*passim*

**ADMINISTRATIVE MATERIALS**

Application of the Definition of Machinegun to "Bump Fire" Stocks
    and Other Similar Devices,
    83 Fed. Reg. 7949 (Feb. 20, 2018).......................................................................2

Bump-Stock-Type Devices,
    83 Fed. Reg. 13442 (Mar. 29, 2018) ....................................................................1

Bump-Stock-Type Devices,
    83 Fed. Reg. 66514 (Dec. 26, 2018) ................................................................3, 8

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 96-1005 (1980) ................................................................................5

H.R. Rep. No. 96-1418 (1979),
    *as reprinted in* 1980 U.S.C.C.A.N. 4984 ...........................................................6

H.R. Rep. No. 99-120 (1985) ..................................................................................5

## INTRODUCTION

The Court should deny Plaintiffs' motion for attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). Fees are not payable under EAJA when the Government's litigation position was "substantially justified," meaning that the Government's position had a reasonable basis in law and fact, even if the Government did not ultimately prevail in the action. Here, the Government's position was substantially justified because the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") relied on reasonable interpretations of the statutory phrases "automatically" and "single function of the trigger," *see* 26 U.S.C. § 5845(b) (defining machinegun), when promulgating the Final Rule at issue in this case. Likewise, the Government adopted reasonable positions while defending this case. Indeed, the reasonableness of the Government's interpretation and positions are evident from the thoughtful decisions of numerous district and circuit courts who agreed with the Government, including this Court, as well as the dissent of three Supreme Court justices in *Garland v. Cargill*, 602 U.S. 406 (2024).

In addition, while Defendants strongly disagree that any fees are appropriate here, if the Court were to conclude otherwise, any fee award should be reduced. As discussed below, Plaintiffs are not entitled to any fee enhancement under EAJA.

## BACKGROUND

### I.  Factual and Regulatory Background

This action concerns ATF's Final Rule classifying bump stocks, which are apparatuses used to replace the standard stock on an ordinary semiautomatic firearm so that a shooter can use the weapon at a rate of fire similar to that of an automatic weapon, as "machineguns" under the Firearm Owners Protection Act of 1986 ("FOPA"). *See* Bump-Stock-Type Devices, 83 Fed. Reg.13442 (Mar. 29, 2018).

1

Beginning in 2007, ATF has issued classification determinations concluding that certain models of bump stocks are lawful firearms parts, unregulated at the federal level. Subsequently, hundreds of thousands of bump stocks have been sold through private purchases. On October 1, 2017, several rifles with attached bump stocks were used to commit the deadliest mass shooting in United states history at a concert in Las Vegas, Nevada. Hundreds of rounds of ammunition were rapidly fired by the perpetrator at a large crowd, killing 58 people and wounding approximately 500.

Machineguns have long been regulated under the National Firearms Act of 1934 ("NFA"), and since passage of the FOPA, the sale of new machineguns to members of the public has been prohibited. Accordingly, ATF has worked diligently to apply the definition of machinegun consistently to bump stocks. In 2006, ATF concluded that one model of bump stock, the "Akins Accelerator," was not a machinegun, then quickly recognized that its determination was in error and reversed itself. However, ATF concluded that some other bump stocks—which lacked a mechanical spring (or similar device) instrumental to the operation of the Akins Accelerator— were not machineguns. These decisions included one classification of a device submitted by the same manufacturer as the bump stocks used by the Las Vegas perpetrator.

After the Las Vegas shooting, members of Congress and the public asked ATF to reexamine its past classification decisions for bump stocks to determine whether those decisions had been correct. In addition, President Trump instructed the Attorney General "to dedicate all available resources to . . . propose for notice and comment a rule banning all devices that turn legal weapons into machineguns." Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices, 83 Fed. Reg. 7949 (Feb. 20, 2018) ("Presidential Memorandum"). The Department of Justice ("DOJ") proceeded to issue a notice of proposed rulemaking ("NPRM"),

2

collect and review over 186,000 comments, and ultimately, to announce the Final Rule, which amended the definition of "machinegun" in DOJ's regulations.

As Defendants established earlier in this litigation, Congress did not define the NFA terms "automatically" and "single function of the trigger." *See* ECF No. 34, at PageID.258. The Final Rule set forth DOJ's interpretations of both terms, clarified for members of the public that bump stocks are machineguns, and overruled ATF's prior classification decisions treating bump stocks as unregulated firearms parts. *See* Bump-Stock-Devices, 83 Fed. Reg. 66514 at 66516, 66531 (Dec. 26, 2018) (explaining that "the previous classification[s] . . . relied on the mistaken premise that . . . such devices do not enable 'automatic' firing"). The Final Rule also instructed "current possessors" of bump stocks "to undertake destruction of the devices" or to "abandon [them] at the nearest ATF office." *Id.* at 66549.

Under the interpretation set forth in the Final Rule, "automatically," in the context of the statutory definition of machinegun, meant "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger." *Id.* at 66554. The Final Rule explained that these definitions were being adopted because they "represent[ed] the best interpretation of the statute." *Id.* at 66521. Relying on these definitions, the Final Rule sets forth the conclusion that "[t]he term 'machinegun' includes a [bump stock]." *Id.* at 66554.

## II. Procedural Background

In December 2018, Plaintiffs filed this action for declaratory and injunctive relief arguing that ATF issued the Final Rule in excess of its statutory authority. ECF No. 1. On March 21, 2019, this Court denied Plaintiffs' motion for a preliminary injunction. ECF. No. 48. On appeal, the Sixth Circuit initially reversed. *Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446 (6th Cir. 2021). The

*en banc* Sixth Circuit then vacated the panel's opinion in an evenly split result, which had the effect of affirming this Court's decision. *Id.* Thereafter, Plaintiffs petitioned the Supreme Court for a writ of certiorari, which was denied in October 2022. *Gun Owners of Am., Inc. v. Garland*, 143 S. Ct. 83 (2022).

This case was then stayed pending further proceedings in *Cargill v. Garland*, No. 20-51016 (5th Cir. Jan. 6, 2023) "due to the potential impact on this case." *See* Order, ECF No. 87 (continuing stay). The Supreme Court issued its opinion in *Cargill* on June 14, 2024. *See* 602 U.S. 406 (2024). There, the Supreme Court held that ATF exceeded its statutory authority by issuing the Rule that classified bump stocks as machineguns under 26 U.S.C. § 5845(b). The Court's decision held that a semiautomatic rifle equipped with a bump stock is not a "machinegun" under § 8545(b) because: (1) it cannot fire more than one shot "by a single function of the trigger"; and (2) even if it could, it would not do so "automatically." *Id.* at 415. Therefore, the Court held that ATF exceeded its statutory authority in promulgating the Rule. *Id.* Justice Sotomayor, joined by Justices Kagan and Jackson, wrote a dissent explaining that a bump-stock-equipped semiautomatic rifle satisfies FOPA's definition of a machinegun. *Id.* at 430.

Accordingly, on November 1, 2024, this Court entered judgment for Plaintiffs, declaring that the ATF Rule "was issued in excess of ATF's statutory authority and is therefore unlawful." Order, ECF No. 103, at PageID.6594 (citing *Cargill*, 602 U.S. at 415). The Court further dismissed Plaintiffs' Fifth Amendment takings claim and Plaintiffs' Due Process claim without prejudice. *Id.* Plaintiffs then filed their Motion for attorneys' fees. *See* ECF No. 105.

## ARGUMENT

### I.   Legal Standards

The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, provides in part:

4

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . , including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust.

*Id.* § 2412(d)(1)(A)-(B) (emphasis added). "The EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity. Any such waiver must be strictly construed in favor of the United States." *Ardestani v. INS*, 502 U.S. 129, 137 (1991).

The purpose of the Act is "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government" and "ensure that certain individuals, partnerships, corporations . . . or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved." *Scarborough v. Principi*, 541 U.S. 401, 406–07 (2004) (omission in original) (quoting H.R. Rep. No. 96-1005, pt. 1, at 9 (1980) and H.R. Rep. No. 99-120, at 4 (1985)).

EAJA only allows an award of fees if "the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B). Substantial justification is not a high bar: "Substantially justified" simply means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). EAJA thus restricts fee awards to a subset of the cases in which the non-government party prevails.

EAJA was "designed to compensate victims of *unjustified* litigation by the Government from some of the burdensome expenses and costs to which they were subjected by the Government's taking of unreasonable positions." *SEC v. Price Waterhouse*, 41 F.3d 805, 809 (2d Cir. 1994). Congress limited EAJA awards to cases in which the Government's position was not

5

"substantially justified" because its aim was "to furnish relief from . . . governmental litigation abuse." *Id.*; *see also Anthony v. Sullivan*, 982 F.2d 586, 588 (D.C. Cir. 1993) (characterizing EAJA as "somewhat stingier" than the fee provisions of Title VII). As explained in the House Report accompanying the relevant bill:

> The [substantial justification] standard . . . should not be read to raise a presumption that the government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the government to establish that its decision to litigate was based on a substantial probability of prevailing.

H. R. Rep. No. 96-1418 at 11 (1979), *as reprinted in* 1980 U.S.C.C.A.N. 4984, 4990. Indeed, "[a] position can be justified even though it is not correct and can be justified if a reasonable person could think it correct . . . ." *Gray v. Comm'r of Soc. Sec.*, 23 Fed. Appx. 436, 437 (6th Cir. 2001) (citing *U.S. Real Property Located at 2323 Charms Rd.*, 946 F.2d 437, 440 (6th Cir. 1991)).

A finding that the government's position was not substantially justified is a threshold condition for an award of fees and costs under EAJA. *Comm'r, INS v. Jean*, 496 U.S. 154, 160 (1990). As with the question of whether the non-government party prevailed, the Court determines whether the government's position was substantially justified by looking at the case as a whole. *See id.* at 161-62.

Even if an EAJA movant establishes that it prevailed and the government's position was not substantially justified, the movant is only entitled to fees that are "reasonable." 28 U.S.C. § 2412(d)(2)(A); *see also* 28 U.S.C. § 1920 (allowing costs for transcripts and copies of materials only if "necessarily obtained for use in the case").

> **II.    Plaintiffs Are Not Entitled to Fees and Costs Under EAJA Because ATF's Position Was Substantially Justified**
>
> > **A.  As the Sixth Circuit Has Noted, Numerous Favorable Judicial Decisions Show that ATF's Position Was Substantially Justified.**

Here, whether ATF's position was substantially justified yields a straightforward answer that can be resolved based on the words of the Sixth Circuit alone. As that Court has recognized, there are over twenty federal court opinions weighing in on whether a bump stock is included in the definition of a machinegun. *See Hardin v. ATF*, 65 F.4th 895, 898 (6th Cir. 2023) (noting that at the time of that decision, there were already twenty-two judicial opinions on the issue). And "there can be no doubt that a significant number of *reasonable jurists* have reached diametrically opposed conclusions as to whether the definition of a machinegun includes a bump stock." *Id.* (emphasis added).

Indeed, despite the Supreme Court's ultimate ruling to the contrary, many of the jurists and courts to consider the issue—including this Court and half of the Sixth Circuit judges—concluded that ATF reasonably interpreted the statute when it classified bump stocks as machineguns. *See* Order, ECF No. 34, at PageID.269-270; *see also Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446 (6th Cir. 2021); *Aposhian v. Barr*, 958 F.3d 969 (10th Cir. 2020), *aff'd* 374 F. Supp. 3d 1145 (D. Utah 2019). *Hardin v. ATF,* 501 F. Supp. 3d 445, 453 (W.D. Ky. 2020) ("ATF reasonably interpreted the definition of 'machinegun.'"), *rev'd* 65 F.4th 895 (6th Cir. 2023); *Cargill v. Garland*, 20 F.4th 1004, 1013 (5th Cir. 2021), *rev'd en banc,* 37 F.4th 1091 (5th Cir. 2022); *Cargill v. Barr*, 502 F. Supp, 3d 1163, 1192-93 (W.D. Tex. 2020), *rev'd en banc*, 37 F.4th 1091 (5th Cir. 2022); *Guedes v. ATF*, 45 F.4th 306 (D.C. Cir. 2022), *aff'g* 520 F. Supp. 3d 51, 64 (D.D.C. 2021) ("The interpretation of the phrase 'single function of the trigger' is reasonable."). Similarly, three

7

Supreme Court justices adopted the Government's position that ATF reasonably interpreted the statutory language. *Cargill*, 602 U.S. at 434-35 (Sotomayor, J., dissenting).

Thus, the history of this litigation and broader litigation on the issue demonstrate that "a reasonable person could think [the agency position] correct." *Pierce*, 487 U.S. 564 n.2; *see also Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 571 (6th Cir. 2021) ("While the presence of a dissent may not always demonstrate that the government's position was substantially justified, the deliberate and thoughtful nature of Judge Rogers's reasoning signals that reasonable minds could disagree on these issues."). Indeed, jurists on at least ten courts have determined that ATF's interpretation is correct, or in some cases, even the "best" interpretation. *See supra* at 7.

### B. As the Sixth Circuit Has Recognized, ATF's Change in Position Over Time Does Not Undermine the Reasonableness of the Government's Position.

Plaintiffs argue that because ATF has previously taken "the position that semiautomatic rifles equipped with bump stocks were not machineguns under the statute," ATF's change in position in the Final Rule suggests that its position in this case is unreasonable. Pls.' Mem. at 7, ECF No. 105, at PageID.6608 (quoting *Cargill*, at 412). But Plaintiffs' argument disregards the fact that the Sixth Circuit has said the opposite: "The *viability* of competing interpretations is exemplified not only by the myriad and conflicting judicial opinions on this issue, but also by the ATF's own flip-flop in its position." *Hardin*, 65 F.4th at 898 (emphasis added).

Indeed, consistent with the Sixth Circuit's view, there is evidence in the Final Rule that after President Trump's instruction, ATF's change in position is the result of the fact that the agency's prior interpretations lacked "extensive legal analysis of the statutory terms 'automatically' or 'single function of the trigger.'" 83 Fed. Reg. at 66516. Specifically, when promulgating the Final Rule, ATF acknowledged that it was "reconsider[ing] and rectify[ing]" its previous classification decisions based on its legal analysis of those terms. *Id.* at 88516 (quoting

8

*Akins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009)). An agency's ability to carefully reconsider agency interpretations that it may come to believe are incorrect is well established and does not signal the type of Government abuse from which EAJA seeks to protect plaintiffs. *See supra* Part I; *see also Chamber of Com. v. SEC*, 115 F.4th 740, 750 (6th Cir. 2024) (acknowledging that a change in agency position is not arbitrary and capricious where the agency has thoughtfully explained its change in position) (citing *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1038-39 (D.C. Cir. 2012); *Mary v. Harris Found. v. FCC*, 776 F.3d 21. 24 (D.C. Cir. 2015) (explaining that an agency's past actions are "of no moment . . . if its current approach reflects a permissible interpretation of the statute")). Moreover, to determine that an agency's position is inherently unreasonable, despite numerous courts' agreement with that interpretation, merely because the agency undertook to correct a prior interpretation that it understood to be incorrect, would lack any foundation in EAJA and therefore run afoul of the Government's sovereign immunity. *See Ardestani*, 502 U.S. at 137 ("The EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity.").

### C. The Supreme Court's Determination that the Statutory Language Is Unambiguous Has No Bearing on the Substantial Justification Analysis.

Plaintiffs further argue that because the Supreme Court held that "Defendants took a position that is contrary to the plain meaning of an unambiguous statute," the Government's interpretation is unreasonable. Pls.' Mem. at 8, ECF No. 105, at PageID.6609 (citing *Cargill*, 602 U.S. at 424). But this argument misapplies the EAJA standard. As the Supreme Court clarified in *Pierce*, "a position can be [substantially] justified even though it is not correct." 487 U.S. at 566 n.2. While the Court has held that ATF's classification of bump-stock-equipped semiautomatic

9

weapons as machineguns is incorrect, *Cargill* does not stand for the proposition that every court to reach the contrary conclusion was "unjustified" under EAJA's standards.

Further, to the extent that Plaintiffs argue that the Supreme Court's decision to overrule *Chevron* deference has any bearing on the substantial justification analysis in this case, Pls.' Mem. at 3, ECF No. 105, at PageID.6604, that is incorrect. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron* deference). Although this Court partially based its denial of Plaintiffs' motion for a preliminary injunction on the fact that ATF's interpretation was a "permissible interpretation . . . entitled to *Chevron* deference," Opinion and Order, ECF No. 48, at PageID.465, the reversal of *Chevron* does not impact how this Court should approach the issue of substantial justification under EAJA.

As an initial matter, Defendants did not make arguments based on *Chevron* deference in their briefing. Defendants' Brief in Opp., ECF No. 34. And the substantial justification analysis under EAJA turns on whether *Defendants* adopted a reasonable position—not the Court. *See Pierce*, at 565. Likewise, several of the courts and jurists to adopt Defendants' position either (1) did so on the basis of the statutory text alone, or (2) acknowledged that they would still adopt Defendants' position irrespective of *Chevron* deference. *See, e.g.*, *Cargill*, 602 U.S. at 434-35 (Sotomayor, J., dissenting) (not mentioning *Chevron* deference); *Hardin*, 65 F. 4th, at 900 (holding that *Chevron* deference does not apply); *Cargill*, 502 F. Supp. 3d at 1190, *rev'd* 602 U.S. 406 (same). Thus, even without *Chevron*, the history of litigation on this issue demonstrates that a reasonable person could find the agency's position correct.

Moreover, even where a court relied on *Chevron* deference to determine that ATF's Final Rule was legally permissible—like the Court did here—the elimination of *Chevron* deference does not negate any court's conclusion that the agency's interpretation is a reasonable interpretation of

10

the statute at issue. Indeed, although the Supreme Court would now advise that a federal court would be asking the wrong questions if it tried to determine the legality of an agency action by asking whether an agency interpretation was reasonable under the *Chevron* framework, *Loper Bright* does not have any bearing on a court's holding that ATF's determination that bump-stock-equipped semiautomatic weapons are machineguns was permitted by the statute. *Cf. Loper Bright*, 144 S. Ct. at 2273. Because the proper question before the Court under EAJA is whether any person could find the agency's position reasonable, the fact that this Court, like many others, already found the interpretation reasonable is still instructive.

### III.  Plaintiffs Are Not Entitled to a Fee Enhancement

If this Court disagrees with Defendants' argument that Plaintiffs are not entitled to fees because the Government's position was substantially justified, any fee award should be limited because Plaintiffs are not entitled to the fee enhancement they have requested. EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S. C. § 2412(d)(2)(A). Here, Plaintiffs' request for a fee award in excess of the presumptive cap because of a "special factor," *see* Pls.' Mem. at 11, ECF No. 105, at PageID.6612, is not supported by the statute or precedent.

Specifically, Plaintiffs argue that they are entitled to a "special expertise" fee enhancement because of "the highly technical and specialized nature of this litigation, and the relatively small number of attorneys who litigate such matters." Pls.' Mem. at 13, ECF No. 105, at PageID.6614. They classify counsel's expertise as expertise in "Second Amendment and firearms cases in federal court." *Id.* at 11, ECF No. 105, at PageID.6612. But, as this Court has noted, "multiple courts have found that expertise justifying enhancements must come from 'specialized training,' and not just

11

experience in a specific field." *Forest Serv. Emps. v. U.S. Forest Serv.*, No. 5:08-CV-00091, 2010 WL 5159321 (W.D. Ky. Dec. 14, 2010) (citing *In re Sealed Case* 00-5116, 254 F.3d 233, 235 (D.C. Cir. 2001); *Estate of Cervin v. Comm'r*, 200 F.3d 351, 354 (5th Cir. 2000); *Raines v. Shalala*, 44 F.3d 1335 (7th Cir. 1995); *Stockton v. Shalala*, 36 F.3d 49, 50 (8th Cir. 1994); *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990)). Indeed, "[i]f expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements." *Id.* (quoting *In re Sealed Case*, 254 F.3d at 236). But "nothing in EAJA suggests this entitlement." *Id.* Notably, applying this same reasoning, the D.C. Circuit has rejected a claim that firearms law represented a qualifying specialty. *F.J. Volmer Co. v. Magaw*, 102 F.3d 591, 598 (D.C. Cir. 1996). Thus, this Court should reject Plaintiffs' claim that any specialized knowledge held by plaintiffs' counsel justifies a fee enhancement in this case.

Relatedly, Plaintiffs' argument that a "lack of qualified counsel" is further demonstrated by the fact that "there were only approximately six other cases filed challenging the Rule," also falls short. Pls.' Mem. at 12, ECF No. 105, at PageID.6613. As the Supreme Court made clear in *Pierce*, even though EAJA contemplates fee enhancements in certain circumstances where specialized counsel is limited, courts may not enhance fees beyond EAJA's statutory cap merely because "lawyers skilled and experienced enough to try the case are in short supply." *Pierce*, 487 U.S. at 571-72. Therefore, even if this Court were to accept Plaintiffs' unsupported allegation that the quantity of litigation on this issue is reflective of a lack of qualified counsel, *Pierce* supports the proposition that the "limited availability" exception is insufficient to justify a fee enhancement under these circumstances. Accordingly, if this Court determines that Plaintiffs are entitled to any fees, the usual EAJA rates should only be adjusted for cost-of-living, and no other enhancements should apply.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated: December 16, 2024

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LESLEY FARBY
*Deputy Branch Director*

/s/ *Olivia G. Horton*
OLIVIA G. HORTON (TX Bar No. 24120357)
ALEXANDER V. SVERDLOV (NY Bar No. 4918793)
*Trial Attorneys*
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-0747
Facsimile: (202) 616-8460
Email: olivia.g.horton@usdoj.gov

*Counsel for Defendants*