UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUN OWNERS OF AMERICA, INC., *et al.*,   )
                                        Plaintiffs,   )
                                                           )         No. 1:18-cv-1429
-v-                                                        )
                                                           )         Honorable Paul L. Maloney
MERRICK GARLAND, *et al.*,   )
                                      Defendants.   )
                                                           )

## OPINION AND ORDER DENYING MOTION FOR ATTORNEY FEES AND GRANTING IN PART MOTION FOR COSTS

After the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) adopted a Final Rule reinterpreting the definition of "machinegun" and banning the ownership of bump stocks, Plaintiffs filed this lawsuit. In other lawsuits, the United States Supreme Court and the Sixth Circuit Court of Appeals issued rulings favorable to these Plaintiffs. *See Garland v. Cargill*, 602 U.S. 406 (2024); *Hardin v. Bur. Alcohol, Tobacco, Firearms and Explosives*, 65 F.4th 895, 902 (6th Cir. 2023) *cert. denied Garland v. Hardin*, 144 S. Ct. 2680 (2024). Binding on this Court, those opinions provided the basis for resolving this lawsuit on the merits. The Court has since issued a final order. Plaintiffs now seek attorney fees under the Equal Access to Justice Act (EAJA) (ECF No. 104). Plaintiffs seek over $400,000 in attorney fees and approximately $35,000 in litigation costs. In response, Defendants contend the government's opposition to the lawsuit advanced a substantially justified position, one that would satisfy a reasonable person. The Court agrees and will deny Plaintiffs' request for attorney fees. The Court will grant in part Plaintiffs' request for costs.

I.

For lawsuits against the United States, the EAJA creates an exception to the general rule that each party must pay its own attorney fees. *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 563 (6th Cir. 2021) (citing *Scarborough v. Principi*, 541 U.S. 401, 404 (2004)). The "purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental action." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 164 (1990). The statute extends the fee-shifting provision to civil actions against the United States involving the judicial review of administrative actions, "unless the court finds that the position of the United States was substantially justified[.]" *Id.* (quoting 28 U.S.C. § 2412(d)(1)(A)). For a court to award fees under the EAJA, the court must find (1) the claimant is a prevailing party, (2) the government's position was not substantially justified, (3) no special circumstances make the award unjust, and (4) the fee application was timely and supported by an itemized statement. *Jean*, 496 U.S. at 158. The second element, substantial justification, "focuses on the governmental misconduct giving rise to the litigation." *Id.* at 165. In this motion, the parties dispute only the substantial justification element.

"The government bears the burden of proving substantial justification." *Griffith*, 987 F.3d at 563 (citing *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014)). The government advances a substantially justified position "if 'a reasonable person could think it correct' and 'it has a reasonable basis in law and fact.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)); *see Jean*, 496 U.S. at 1158 n.6 (explaining that the standard "is no different from the 'reasonable basis both in law and fact' formulation"). The government's position must be "justified in substance or in the main" which means that the

position "must be 'more than merely undeserving of sanctions for frivolousness.'" *Id.* (quoting *Pierce*, 487 U.S. at 566 and n.2). The government's position may be substantially justified even when it is ultimately found to be incorrect. *Id.* (quoting *Pierce*, 487 U.S. 566 n.2). Our Supreme Court noted that in other contexts, the term substantially justified "has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' or 'if reasonable people could differ as to the appropriateness of the contested action[.]'"[1] *Pierce*, 487 U.S. at 565 (cleaned up; all citations omitted).

When determining substantial justification, courts focus on the merits of the government's position. *Griffith*, 987 F.3d at 563. The court must consider the government's position as a whole which includes both pre-litigation conduct and the arguments made during the litigation. *Id.* at 564. For lawsuits challenging agency actions, the government's position includes the underlying agency action and the litigation itself. *Amezola-Garcia v. Lynch*, 835 F.3d 553, 555 (6th Cir. 2016). Courts must "guard against being 'subtly influenced by the familiar shortcomings of hindsight judgment.'" *Griffith*, 987 F.3d at 563-64 (citation omitted). And, courts should recognize the distinction between lawsuits in which the government lost because it "vainly pressed" positions at odds with controlling law from lawsuits "in which 'the government lost because an unsettled question was resolved unfavorably.'" *Id.* at 564 (citation omitted).

---

[1] Following *Pierce*, the Sixth Circuit vacated its opinion in *Riddle v. Secretary of Health and Human Services*, 817 F.2d 1238 (6th Cir. 1987) in which it described the standard as "firmly grounded or solidly based on law and fact," something more than simply reasonable. *See Riddle v. Sec'y HHS*, 823 F.2d 164 (6th Cir. 1987).

In addition to the merits, courts may consider "'objective indicia' of reasonableness" such as dissenting opinions and outcome of similar litigation in other courts. *Id.* The objective criteria, however, are "not dispositive" of the substantial justification inquiry, *Holman v. Vilsack*, 117 F.4th 906, 913 (6th Cir. 2024), and "matter less 'than the actual merits of the Government's litigating position,'" *id.* at 917 (quoting *Griffith*, 987 F.3d at 653).

## II.

In large part, this lawsuit presented a straightforward question of statutory interpretation. Congress defined "machinegun" to mean "any weapon which shoots ... automatically more than one shot, without manual reloading, by a single function of the trigger ...." 26 U.S.C. § 5845(b). In the Final Rule, the ATF adopted interpretations of "automatically" and "single function of the trigger" and extended the definition of "machinegun" to include bump stocks. *See* Bump-Stock-Type Devices, 83 Fed. Reg. 66514 (Dec. 26, 2018). ATF interpreted "single function of the trigger" to mean "a single pull of the trigger and analogous motions." *Id.* at 66553. ATF interpreted "automatically" to mean "functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger." *Id.*

## A.

The Court concludes Defendants offered a substantially justified position in this lawsuit. At the time ATF adopted the Final Rule, the proper interpretation of the statutory text remained unsettled. AFT's interpretation had some basis in the law. And, the Sixth Circuit held that ATF offered a reasonable interpretation.

First, at the time ATF adopted the Final Rule in 2018, the proper interpretation of the word machinegun remained unsettled. "[N]either the National Firearms Act nor the Gun Control Act defines 'automatically' or 'single function of the trigger.'" *Gun Owners of America v. Garland*, 19 F.4th 890, 905 (6th Cir. 2021); *see United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002) ("The words 'automatic" and 'trigger' are not defined in the statute or regulations."). Congress tasked ATF with the enforcement of our nation's firearms laws, *see* 28 U.S.C. § 599A, which in this dispute required ATF to consider the meaning of the key words and phrases in the definition of machinegun. The absence of authoritative precedent interpreting the key phrases in the definition of machinegun lends support to finding the government's position substantially justified. *See Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) ("Furthermore, in assessing the justification of the government's position, courts consider the clarity of the governing law, that is, whether 'judicial decisions on the issue left the status of the law unsettled,' and whether the legal issue was novel or difficult.") (all citations omitted); *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005) (explaining that courts "must analyze *why* the position failed in court: if, for example, the government lost because it vainly pressed a position 'flatly at odds with the controlling case law,' that is one thing; quite another if the government lost because an unsettled question of law was resolved unfavorably.") (italics in original; all citations omitted). The absence of precedent does not resolve the issue in Defendants' favor; the government's position must still be reasonable.

Second, the government's interpretation of the language in the definition of machinegun finds some support in prior court opinions. In 1984, the Supreme Court

5

considered a challenge to a criminal conviction for possession of a firearm that was not properly registered, a violation of 26 U.S.C. § 5871. *See Staples v. United States*, 511 U.S. 600 (1984). The defendant possessed an AR-15, a semiautomatic weapon, that had been modified in a manner to permit fully automatic fire. *Id.* at 603. Fully automatic weapons are considered firearms and must, therefore, be registered. *Id.* At trial, the defendant alleged ignorance of the particular weapon's capability. *Id.* The opinion addressed the scienter issue. Relevant to this lawsuit, in a footnote, the Court explained how the opinion used the words "automatic" and "fully automatic" to "refer to a weapon that fires repeatedly with a single pull of the trigger." *Id.* at 602. In contrast, the Court used the term "semiautomatic" to refer to "a weapon that fires only one shot with each pull of the trigger, and which requires no manual manipulation by the operator to place another round in the chamber after each round in fired." *Id.*

More than two decades later, ATF considered the Akins Accelerator, which ATF initially concluded was not a machinegun and then reversed course and determined that it was a machinegun. *See Akins v. United States*, No. 8:08cv988, 2008 WL 11455059, at *2-*3 (M.D. Fla. Sept. 23, 2008). Akins challenged the determination, which the district court and the Eleventh Circuit upheld. *See Akins v. United States*, 312 F. App'x 197, 201 (11th Cir. 2009). The district court relied on the language in *Staples* to conclude that the phrase single function of the trigger in the statute "is synonymous with 'single pull of the trigger.'" *Akins*, 2008 WL 11455059, at *5 (quoting *Staples*, 511 U.S. at 603 n.1). The district court found that the "legislative history of the [National Firearms Act] also confirms that the ATF, …, reasonably reads the phrase 'single function of the trigger' as encompassing any 'single

pull of the trigger.'" *Id.* Affirming the district court, the Eleventh Circuit concluded that ATF's interpretation "that the phrase 'single function of the trigger' means a 'single pull of the trigger' is consonant with the statute and its legislative history." *Akins*, 312 F. App'x at 200. The Federal Court of Claims has noted that ATF has been interpreting the phrase single function of the trigger to mean single pull of the trigger since 2006.[2] *Modern Sportsman, LLC v. United States*, 145 Fed. Cl. 575, 580 (2019).

*Staples* likely does not bind any court as to the proper interpretation of the words machinegun or automatically or the phrase single function of the trigger. Those terms were not in dispute in *Staples* and the criminal action did not require the Court to perform a statutory construction of the word machinegun. Nevertheless, the language in *Staples* is relevant here. The issue for substantial justification is whether a reasonable person would think that the government's position had a basis in fact and law. A reasonable person would read *Staples* and conclude that the government's interpretations of single function and automatically had a basis in law and fact. Indeed, when parties have argued that the footnote in *Staples* constitutes dictum, district courts have noted that the explanation deserves some weight. *See, e.g., United States v. Rare Breed Triggers, LLC*, 690 F. Supp. 3d 51, 79 (E.D.N.Y. 2023) (rejecting the defendant's assertion that *Staples* is mere dictum because "interpretations of law from an appellate court—particularly the United States Supreme Court—even if technically dicta, are entitled to persuasive weight by a district court in the

---

[2] Effective December 25, 2007, AFT promulgated a regulation that defined machinegun to mean "a firearm originally designed to fire, or capable or being fired automatically by a single pull of the trigger." 27 C.F.R. § 447.11. That definition remained part of the regulation until the Final Rule took effect on March 26, 2019.

absence of other, binding interpretations of the same law"). The group of individuals constituting reasonable people would likely not have the same background and legal expertise as seasoned attorneys and federal judges with the acumen to distinguish between binding precedent, persuasive authority and mere dicta.

Third, the Sixth Circuit's opinion in *Hardin* likely provides binding authority that the government's position enjoyed substantial justification. The opening paragraph of the opinion describes the question about bump stocks as "a close one on which reasonable jurists have disagreed." *Hardin*, 65 F.4th at 897. The *Hardin* opinion issued after more than twenty other court opinions issued but before the Supreme Court issued its opinion in *Cargill*. The Sixth Circuit explained the situation as follows:

> Hardin argues that the statutory definition of a machinegun unambiguously excludes bump stocks, whereas the ATF argues that the best reading of the statute compels the opposite conclusion. Without repeating the intricacies of those positions here, there can be no doubt that a significant number of reasonable jurists have reached diametrically opposed conclusions as to whether the definition of a machinegun includes a bump stock.

*Id.* at 898.

In addition to the Sixth Circuit, two other circuits found that ATF's interpretation of the statute to be reasonable. As happened in this lawsuit, the district courts in the other two lawsuits denied requests for a preliminary injunction to stay enforcement of the Final Rule. *See Guedes v. Bur. Alcohol, Tobacco, Firearms and Explosives*, 356 F. Supp. 3d 109, 130-33 (D.D.C. 2019) (finding reasonable ATF's definitions of single function of the trigger and automatically); *Aposhian v. Barr*, 374 F. Supp. 3d 1145, 1151-55 (D. Utah) (finding that ATF's interpretation finds support in prior opinions interpreting the statute). On appeal in

*Guedes*, the District of Columbia Circuit Court found that the ATF offered a permissible interpretation of the statute, one that found some support in earlier court opinions. *Guedes v. Bur. Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1, 31-32 (D.C.C. 2019). The Supreme Court denied the petition for writ of certiorari. *Guedes v. Bur. Alcohol, Tobacco, Firearms and Explosives*, 140 S. Ct. 789 (2020). In *Aposhian*, the Tenth Circuit affirmed the denial of a preliminary injunction finding that the ATF's definitions were permissible readings of the statute and consistent with how some courts had previously read the statute.[3] *Aposhian v. Barr*, 958 F.3d 969, 988 (10th Cir. 2020). Again, the Supreme Court denied the petition for writ of certiorari. *Aposhian v. Garland*, 143 S. Ct. 84 (2022). While the Supreme Court ultimately resolved the dispute in a manner favorable to these plaintiffs, the Court declined to stay enforcement of the Final Rule when the district courts and the circuit courts found ATF to have offered a reasonable interpretation of the statute.[4]

Objective indicia also supports the conclusion that the government advanced a substantially justified position. A majority of the opinions considering challenges to the Final Rule addressed the propriety of a preliminary injunction. Most of those opinions, including

---

[3] The Tenth Circuit vacated the initial opinion after agreeing to hear the appeal *en banc*. *Aposhian v. Barr*, 973 F.3d 1151 (10th Cir. 2020). After oral argument, the Tenth Circuit concluded that *en banc* consideration had been improvidently granted and reinstated the initial opinion. *Aposhian v. Wilkinson*, 989 F.3d 890 (10th Cir. 2021).

[4] As the parties know, the Sixth Circuit initially reversed this Court's decision to deny the preliminary injunction. *Gun Owners of America v. Garland*, 992 F.3d 446 (6th Cir. 2021). The Sixth Circuit then vacated that decision and agreed to take the case *en banc*. *Gun Owners of America v. Garland*, 2 F.4th 576 (6th Cir. 2021). The *en banc* panel issued an evenly split opinion which functioned to affirm this court's decision to deny the preliminary injunction. *Gun Owners of America v. Garland*, 19 F.th 890 (6th Cir. 2021). Consistent with *Aposhian* and *Guedes*, the Supreme Court denied the petition for writ of certiorari. *Gun Owners of America v. Garland*, 143 S. Ct. 83 (2022).

the Sixth, Tenth and District of Columbia Circuit Courts, all concluded that the plaintiffs did not have a likelihood of success on the merits because ATF advanced a reasonable interpretation of the statute. When the Sixth Circuit considered an appeal of a challenge to the Final Rule decided on the merits, the Sixth Circuit resolved the case against the government. The majority acknowledged the "viability" of the competing interpretations. *Hardin*, 65 F.4th at 898. The Supreme Court denied the government's petition for a writ of certiorari. *Garland v. Hardin*, 144 S. Ct. 2680 (2024).

The *Cargill* litigation also establishes that reasonable jurists have disagreed about the interpretation of the statute. The *en banc* panel of the Fifth Circuit Court of Appeals sided with the government. *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023). Chief Judge Richman and Judge Haynes concurred in the judgment "only because [they] conclude that the relevant statute is ambiguous such that the rule of lenity favors the citizens in this case." *Id.* at 473 (Haynes, J. concurring). Chief Judge Richman and Judges Ho and Southwick concurred in part and in the judgment in an opinion explaining why they found the statute ambiguous and applying the rule of lenity. *Id.* at 473-79 (Ho, J. concurring). Judges Higginson, Dennis and Graves dissented finding the statute ambiguous and declining to apply the rule of lenity. *Id.* at 479-83 (Higginson, J. dissenting). Three justices, Sotomayor, Kagan and Jackson, dissented when the Supreme Court issued its opinion in *Cargill*. *Cargill*, 602 U.S. at 429-46 (Sotomayor, J. dissenting).

### B.

Finally, the Court addresses Plaintiffs' arguments. Plaintiffs assert that the government's position constituted an abrupt change motivated by political pressure.

Plaintiffs argue the Supreme Court rejected the merits of the ATF's interpretation. And, Plaintiffs contend that the government advanced inaccurate facts to support its position.

The Court views Plaintiffs' first argument, ATF's reversal, to be a type of objective indicia about the reasonableness of the government's position. The political pressure following the shooting in Las Vegas explains the motivation for ATF's change in position but does not address the merits of the new position. As objective indicia, the shift in position, by itself, provides little support for the conclusion that the government's position did not enjoy substantial justification. Like other objective indicia, the shift does not amount to dispositive evidence of a lack of justification. Courts must focus on the justification offered by the agency for the new policy and not the fact that the agency changed its position. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016) (citing, among others, *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-15 (2009) and *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)); *see also Lansing Dairy Inc. Espy*, 39 F.3d 1339, 1354 (6th Cir. 1994). ATF offered a plausible explanation for the change explaining that earlier determinations "did not include extensive legal analysis" of the key statutory terms. 83 Fed. Reg. at 66516; *see id.* at 66518. Plaintiffs have not challenged that particular explanation. And, as described above, many judges who reviewed the new interpretation found ATF's interpretation to be reasonable.

The Supreme Court's rejection of ATF's interpretation of the statute provides the strongest argument for Plaintiffs. The majority of Supreme Court justices rejected ATF's interpretation of the statute. For the reasons outlined in the previous section, the Court finds that the government's position, while incorrect, had substantial justification. Plaintiffs'

arguments here do not alter that conclusion. The Court disagrees with Plaintiffs' assertion that the Supreme Court "*held* that Defendants took a position that is contrary to the plain meaning of an unambiguous statute" (ECF No. 105 at 8 PageID.6609 - emphasis added). Literally, the majority opinion does not use the word "plain" or "meaning" or the phrase "plain meaning." Nor does the majority opinion use the phrase "ambiguous" or "unambiguous" to describe the statute.[5] The Court also disagrees with the Plaintiffs assertion that the Supreme Court *held* that Defendants had abandoned the text (*id.*). The Court wrote "[a]bandoning the text, ATF and the dissent attempt to shore up their position by relying on the presumption against ineffectiveness." *Cargill*, 602 U.S. at 427. The sentence simply acknowledges that the government advanced textual arguments and also relied on a canon of statutory construction. Section II A discussed the phrase single function of the trigger and Section II B discussed the word automatically. The abandoning-the-text language appears in a transition sentence at the very beginning of Section II C where the Court addresses the canon of statutory construction.

Plaintiffs contend that the government misled the courts on the facts about how bump stocks worked. Plaintiffs have not persuaded the Court that the government's description of how a bump stock functions renders its position unjustified. This dispute centered on the appropriate interpretation of a statute. *See Cargill*, 602 U.S. at 415-16 ("As always, we start with the statutory text, ....") (Thomas, J. for the majority); *id.* at 429 ("I join the opinion of the Court because there is simply no other way to read the statutory language.") (Alito, J.

---

[5] The Supreme Court did use the words "ambiguous" and "unambiguous" to describe how other courts interpreted the statute. *Cargill*, 602 U.S. at 414.

concurring); *id.* at 435 ("The majority's reading flies in the face of this Court's standard tools of statutory interpretation.") (Sotomayor, J. dissenting). "'A matter requiring statutory interpretation is a question of law requiring de novo review, and the starting point for interpretation is the language of the statute itself.'" *Roberts v. Hamer*, 655 F.3d 578, 582 (6th Cir. 2011) (quoting *United States v. Brown*, 639 F.3d 735, 737 (6th Cir. 2011)). Where multiple federal judges have reasonable disagreements about the proper interpretation of a statute, courts have found the government's position substantially justified and have denied motions for EAJA fees. *See, e.g., Medina Tovar v. Zuchowski*, 41 F.4th 1085, 1090-91 (9th Cir. 2022).

Because the dispute turned on statutory interpretation, Plaintiffs have not demonstrated that resolution of the alleged factual dispute was critical their status as the prevailing party. Moreover, Plaintiffs have not demonstrated that the alleged factual disputes were actual disputes. Plaintiffs contend that ATF inaccurately described bump stocks as harnessing recoil energy (ECF No. 105 PageID.6610). ATF addressed this issue in the Final Rule when it addressed objections to its description of how a bump stock worked. A bump stock "'direct[s] the recoil energy of the discharged rounds into a space created by the sliding stock (approximately 1.5 inches) in constrained linear reward and forward paths.'" 83 Fed. Reg. 66532 (citation omitted). ATF uses the verb harness to explain and to describe a bump stock controls the recoil energy. *See* 83 Fed. Reg. 66553 ("In fact, the belt-loop method provides a stabilizing point for the trigger finger but relies on the shooter—not a device— to harness the recoil energy so that the trigger automatically re-engages by 'bumping' the shooter's stationary figure. Unlike a bump-stock-type device, the belt loop or a similar

13

manual method requires the shooter to control the distance that the firearm recoils and the movement along the plane on which the firearm recoils."). The Supreme Court concluded that a bump stock was an "accessory designed to make" the bump firing technique easier. *Cargill*, 602 U.S. at 412. A bump stock "replaces a semiautomatic rifle's stock ... with a plastic casing that allows every other part of the rifle to slide back and forth. This casing helps manage the back-and-forth motion required for bump firing." *Id.* ATF's description and the Supreme Court's description of how a bump stock words are not factually irreconcilable. Plaintiffs have not demonstrated that the government misled the courts about how bump stocks worked such that the government's position lacked substantial justification. Plaintiffs also argue that ATF asserted that "bump stocks require mere 'constant forward pressure' on the rifle" by the shooter (ECF No. 105 at 9 PageID.6610). Plaintiffs then assert that the Supreme Court "set the record straight" (*id.*) when it explained that the shooter must "maintain just the right amount of forward pressure" (*id.* quoting *Cargill*, 602 U.S. at 424). ATF's description was not misleading. The two descriptions are not irreconcilable; the forward pressure must be both constant and balanced.

The Court must consider the government's position as a whole. The EAJA statute uses the word "position" in the singular. *Jean*, 496 U.S. at 159; *see* 28 U.S.C. § 2412(d)(2)(D). When considering EAJA fees, courts look to "the case as an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at 162. Plaintiffs have not established that any alleged factual disagreement amounted to an intentional misrepresentation undermining the government's position as a whole.

C.

Plaintiffs request costs under § 2412(a)(1) and "other expenses" under § 2412(d)(1)(A) (ECF No. 105 PageID.6615). Plaintiffs incurred these costs from "expert witness fees, filing fees, copying, traveling, computerized legal research costs as well as transcription fees, and specialized Supreme Court practice counsel" (*id.*). Mr. Olson seeks reimbursement for $32,767.41 (ECF No. 105-9 PageID.6680-85). Mr. Morgan seeks reimbursement for $2,084.12 (ECF No. 105-10 PageID.6690). Defendants do not separately address the requests for costs.

A court may award costs against the United States "only to the extent allowed by law." Fed. R. Civ. P. 54(d)(1). Section 2412 of the EAJA, 28 U.S.C. § 2412, provides for both costs and fees. Section 2412(a)(1) establishes that a court "may" award costs to the prevailing party in any civil brought against the United States. Section 2412(b) indicates that a court may award fees in addition to costs. Section 2412(d)(1)(A) requires a court to award fees and other expenses "in addition to any costs awarded pursuant to subsection (a), …, unless the court finds that the position of the United States was substantially justified …." Circuit courts have interpreted these provisions as vesting the trial court with "considerable discretion to award costs." *Neal & Co., Inc. v. United States*, 121 F.3d 683, 687 (Fed. Cir. 1997); *see Cruz v. Comm'r of Soc. Sec.*, 630 F.3d 321, 325-26 (3d Cir. 2010) (following *Neal & Co.*). At least one circuit court also held that the EAJA does not create a presumption in favor of awarding costs to the prevailing party. *Neal & Co.*, 121 F.3d at 687.

The costs recoverable under the EAJA are limited to the costs listed in 28 U.S.C. § 1920. 28 U.S.C. § 2412(a)(1) ("Except as otherwise provided by statute, a judgment for costs,

15

as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded ...."); *F.T.C. v. Kuykendall*, 466 F.3d 1149, 1156 (10th Cir. 2006). Section 1920 permits a court to award costs from (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of any materials where the copies are necessarily obtained for the use in the case; (5) docket fees under section 1923 of this title; and (6) compensation for court appointed experts, compensation for interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. 28 U.S.C. § 1920.

The Court approves $219.00 in costs for Mr. Morgan. His affidavit (ECF No. 105-10 PageID.6689) and attached exhibit (*id.* PageID.6690) establishes that he paid $219.00 for the preparation of the transcript of the preliminary injunction hearing. *See* 28 U.S.C. § 1920(2). The transcripts were necessary for the appeal. The Court declines to award all of the other costs. Counsel seeks $1,865.12 in costs for legal research. The circuit courts have generally concluded that § 1920 does not permit the recovery of costs for legal research. *See Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 43 (1st Cir. 2006); *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996); *Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 1994).

The Court approves $505.00 in costs for Mr. Olson. His affidavit (ECF No. 105-9 PageID.6641) and attached exhibit (*id.* PageID.6681) established that he paid $505 for the filing fee for the appeal in this lawsuit. *See* 28 U.S.C. § 1920(1). The Court denies the multiple entries for legal research costs for the reason the Court denied those cost for Mr.

Kerry. Section 1920 does not authorize a court to award cost for attorney travel, including airline tickets, baggage fees, car rental, local transportation, milage, tolls, parking, taxis, and valet services. *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1179-80 (10th Cir. 2005) (finding that the attorney travel fees are not recoverable as costs under § 1920); *Calderone v. Witvoet*, 112 F.3d 275, (7th Cir. 1997) (per curiam) (finding that travel expenses for attorneys cannot be recovered as costs under § 1920). Section 1920 does not authorize a district court to award costs for attorney lodging and meals. *Stender v. Archstone-Smith Operating Trust*, 958 F.3d 938, 941-42 (10th Cir. 2020) (lodging); *Pelzer v. City of Philadelphia*, 771 F. Supp. 2d 465, 473-74 (E.D. Pa. 2011) (attorney lodging and meals); *Norman v. United States*, 74 F.R.D. 637, 639 (D. Del. 1977) (attorney travel, hotel and meal costs). Section 1920 does not authorize a court to award costs for "delivery" from FedEx. *See Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006).

The Court declines to award costs associated with several entries that have insufficient detail for the Court to conclude that the cost falls under § 1920 and that the cost was necessary for the litigation. The Court denies Plaintiffs' request for $304.84 for "supplies" from Carolina Ammo (ECF No. 105-9 PageID.6880). The Court also denies the requests for printing (*id.* PageID.6681 and PageID.6683)), photocopies (*id.* PageID.6682). The Sixth Circuit has distinguished between copies attributable to discovery, which may be recovered as costs from "copies produced solely for internal use or the convenience of counsel in conducting discovery, which are not" recoverable. *Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293, 298 (6th Cir. 2015). The Court notes that one of the requested costs for printing (PageID.6683) exceeds $5,500. The court also notes that this cost occurred in

17

March 2022 shortly after this Court issued a stay because Plaintiffs filed a petition for writ of certiorari with the Supreme Court (ECF Nos. 72 and 73). The date reduces the likelihood that the costs were attributable to discovery.

The Court also declines to award the costs associated with expert witnesses. Plaintiffs seek over $8,000 for "Expert Consultant" Rick Vasquez (ECF No. 105-9 PageID.6680). Section 1920 does not authorize a court to award costs for expert witness fees.[6] *L & W Supply Corp. v. Acuity*, 475 F.3d 737, 741 (6th Cir. 2007). Also included in the exhibits to Mr. Olson's affidavit are two invoices from the Constitutional Capital Group with an address in California (ECF No. 105-9 PageID.6684-85). Counsel provides no specific explanation for these particular invoices. An individual with the initials JCE charges $950 an hour and appears to have provided consultation about legal issues, including reviewing legal briefs. The Court is aware that attorney John Charles Eastman has been associated with the Constitutional Capital Group.[7] To the extent Mr. Eastman provided expert advice to the attorneys of record in this lawsuit, Plaintiffs cannot recover those expenses as expert witness costs. Nor does § 1920 authorize a court to award costs associated with "specialized Supreme Court practice counsel."

The Court exercises its discretion and awards Plaintiffs $724.00 in costs. Plaintiffs are the prevailing party. The award represents the costs of the transcript of the motion for a

---

[6] The prevailing party can recover travel and other witness costs under 28 U.S.C. § 1821. *L & W Supply*, 475 F.3d at 738 and 741. Plaintiffs do not request any such costs.

[7] For example, Mr. Eastman has submitted amicus briefs to the United States Supreme Court associating himself with the Constitutional Counsel Group at the street address on the invoice submitted in this litigation. *See, e.g., Consumer Fin. Protection Bur. v. Cmty. Fin. Serv. Ass'n of America, Ltd.*, No. 22-448, 2023 WL 4364429 (June 30, 2023).

preliminary injunction and the cost of filing the appeal. These are the only two costs requested by Plaintiffs that are permissible under § 1920.

### III.

The government has established that its position in this litigation had substantial justification. Congress had not defined the key phrases that underlie this dispute. At the time ATF promulgated the Final Rule, the proper interpretation of the word machinegun remained unsettled as to its application to bump stocks. The government's interpretation of single function of the trigger and automatically had some basis in earlier court opinions. The Sixth Circuit has found that the government's position was viable and reasonable. And, prior to its opinion in *Cargill*, the Supreme Court had denied four petitions for writs of certiorari where the circuit court found that the government's position was reasonable. Viewed in this context, the Supreme Court's rejection of the government's interpretation in *Cargill* does not render the government's position unjustified for the purpose of EAJA fees. A reasonable person would think the government's position had a basis in law and fact. Plaintiffs have not persuaded the Court that ATF's reversal from earlier conclusion or alleged factual disputes provide a sufficient basis to find the government's position was not substantially justified.

## ORDER

For the reasons provided in the accompany Opinion, the Court **DENIES IN PART** Plaintiffs' motion for fees and costs under the Equal Access to Justice Act (ECF No. 104). The Court awards Plaintiffs $724.00 in costs. **IT IS SO ORDERED.**

Date:   January 23, 2025                                    /s/  Paul L. Maloney
                                                                                                Paul L. Maloney
                                                                                                 United States District Judge